1  SEDGWICK LLP
   STEPHANIE A. SHERIDAN, State Bar No. 135910
2  stephanie.sheridan@sedgwicklaw.com
   ANTHONY J. ANSCOMBE, State Bar No. 135883
3  anthony.anscombe@sedgwicklaw.com
   MEEGAN B. BROOKS, State Bar No. 298570
4  meegan.brooks@sedgwicklaw.com
   333 Bush Street, 30th Floor
5  San Francisco, CA 94104-2834
   Telephone: 415.781.7900/Facsimile: 415.781.2635
6
7
8  Attorneys for Defendant
   STEIN MART, INC.
9
10
11              UNITED STATES DISTRICT COURT
12             CENTRAL DISTRICT OF CALIFORNIA
13
14 MARILYN SPERLING, an individual;      Case No. 5:15-cv-01411-BRO-KK
   individually and on behalf of all others
15 similarly situated,                   **REPLY IN SUPPORT OF MOTION
                                          FOR REVIEW AND
16                                        RECONSIDERATION OF
             PLAINTIFFS,                  MAGISTRATE JUDGE KATO'S
17                                        ORDER DENYING MOTION FOR
        v.                                PROTECTIVE ORDER; FRCP 72(a)
18                                        OBJECTIONS**
19 STEIN MART, INC.,
20                                        Judge: Beverly Reid O'Connell
             DEFENDANT.                   Mag. Judge: Kenly Kiya Kato
21
22                                        Date:       February 27, 2017
23                                        Time:       1:30 p.m.
                                          Courtroom:  7C – First Street
24
25
26
27
28

## I.     INTRODUCTION

Plaintiff's Opposition argues that by merely making allegations as to all Stein Mart products, the Third Amended Complaint (TAC) has actually stated a claim as to all products.  She is incorrect.  This Court made clear, when it granted Stein Mart's Motion to Dismiss the Second Amended Complaint (SAC), that Plaintiff's allegations as to brand-name products failed because Plaintiff had not pled any facts to show the falsity of Stein Mart's "*Compare At" prices.  This Court has further recognized, with respect to brand-name products, that the allegations of the TAC are identical to those previously rejected as deficient.

The Opposition characterizes Stein Mart's position as being that this Court's Order denying Stein Mart's motion to dismiss the TAC is "of little or no consequence here."  (Opp. at 1.)  Not so.  Stein Mart has allowed discovery to go forward as to private label items, and has not denied discovery as to private label items that Plaintiff did not buy.  At this time, it has not challenged her standing to pursue claims on behalf of persons who purchased other private label items.  Stein Mart has only sought protection with respect to brand-name items.  It has done so because, as to those items, the "TAC quotes the SAC almost verbatim."  (Dkt. 41, at 7, 9.)  These findings *support* Stein Mart's argument that Plaintiff improperly seeks materials beyond the scope of the only claim properly set forth in the TAC.

## II.     *DE NOVO* STANDARD OF REVIEW APPLIES HERE

Plaintiff's Opposition mischaracterizes the standard of review that should be applied here as being the "clearly erroneous standard."  (Opp. at 1, 6.)  Although that standard of review would apply if Stein Mart were challenging Magistrate Judge Kato's *factual* findings, Stein Mart seeks review only of the Court's *legal* conclusions.  *Dang v. Cross*, No. CV 13001 GAF (RZX), 2002 WL 432197, at *1 (C.D. Cal. 2002) ("The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed *de novo*."); *see also United States v.*

REPLY ISO MOTION FOR RECONSIDERATION OF MAG. KATO'S ORDER DENYING PROTECTIVE ORDER

*McConney,* 728 F.2d 1195, 1200-01 (9th Cir.1984) (en banc), *abrogated on other grounds by Pierce v. Underwood,* 487 U.S. 552 (1988) ("Questions of law are reviewed under the non-deferential, de novo standard.").

Stein Mart disputes Magistrate Judge Kato's holding as to the scope of this Court's order denying its motion to dismiss the TAC—a legal conclusion.  Stein Mart also argues that the Magistrate Judge erred to the extent she treated the adequacy of Stein Mart's Fair Pricing Policy ("Policy") as relevant to the scope of the case—another legal conclusion.  Magistrate Judge Kato's holdings as to both issues should thus be reviewed *de novo*.

## III.   ARGUMENT

### 1.   Plaintiff Has Not Stated a Claim as to Brand-Name Items

Plaintiff contends that her claims are "not dependent on any specific product sold at Stein Mart" and that the Court's most recent order denying Stein Mart's motion to dismiss "does not restrict Plaintiff's TAC in any such way."  (Opp. at 5.)  She also argues that the fact that most Stein Mart tags say "*Compare At" is, in itself, enough for her to state a claim as to all items (*id.*), regardless of whether her theory of deception applies to all items.  Plaintiff's arguments ignore this Court's previous Order granting Stein Mart's Motion to Dismiss the SAC (Dkt. 35), which plainly spelled out that in order to state a claim, Plaintiff must allege facts to show that "other retail stores did not sell identical products at 'Compare At' prices."  (*Id.* at 15) (emphasis added).

The Court's Order as to the TAC does not hold that Plaintiff has stated a claim as to either of Plaintiff's national, brand-name purchases—nor could it— because the theory Plaintiff put forth as to private label items does not apply to their brand-name counterparts.  Like in the SAC, Plaintiff alleged in the TAC that the "*Compare At" prices on her other purchases were deceptive because they "were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the products Plaintiff

1   purchased had sold for at other principal retail outlets…" (TAC ¶ 150.) The TAC

2   does not claim that these other items are sold exclusively by Stein Mart, nor does it

3   offer any other factual basis for its claim that the "*Compare At" prices on those

4   items are false. For that reason, this Court found these allegations to be

5   "conclusory" and insufficient to "plead her claims with particularity under Rule

6   9(b)" when it dismissed the SAC. (Dkt. 35, at 12, 15.)

7        Rule 9 is designed to keep plaintiffs from imposing the burdens of discovery

8   when they have not alleged a claim, and to ensure that discovery is limited to the

9   claims set forth in the complaint. *Bly-Magee v. California*, 236 F.3d 1014, 1018

10   (9th Cir. 2001) (Rule 9(b) serves "[T]o deter the filing of complaints as a pretext

11   for the discovery of unknown wrongs, to protect [defendants] from the harm that

12   comes from being subject to fraud charges, and to prohibit plaintiffs from

13   unilaterally imposing upon the court, the parties and society enormous social and

14   economic costs absent some factual basis.") (internal citations and quotation marks

15   omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 … does

16   not unlock the doors of discovery for a plaintiff armed with nothing more than

17   conclusions").[1]

18        In her Opposition, Plaintiff does not purport to have pled any facts to

19   support an inference that the "*Compare At" prices on the brand-name items were

20   fictitious. Instead, Plaintiff attempts to shift her own pleading burden onto Stein

21   Mart, arguing that in order for the case to be limited to private label items, "the

22   Court would have to find that the *only* items at Stein Mart advertised with

23   'Compare At' prices that are based on comparisons to non-identical, comparable

24   items are 'private label' items. Defendant, however, has offered absolutely no

---

[1] Discovery in this case stands to be incredibly expensive—even if limited to private label items—making it all the more important to limit its scope early on. Indeed, in one deceptive pricing case, the defense counsel recently told the court that it would take a full year for the defendant to merely review the requested documents for privilege, with ten people working eight hours a day. *See* Transcript from CMC, *Young v. Levi Strauss & Co.*, Case No. CGC-14-541316 (San Francisco, June 28, 2016), at 46:9-21.

Sedgwick LLP

1    support for this conclusion." (Opp. at 4.)  But it was **Plaintiff's** burden to allege

2    facts to support her claim that pricing on brand-name items is false—the TAC's

3    allegations as to other, unrelated, private label items do not satisfy her burden.

4      **2. The Cases Cited By Plaintiff Are Irrelevant to Whether She Has Stated a Claim**

5

6      Plaintiff dedicates three full pages to her argument that "Plaintiff has

7    Standing to Represent Individuals Who Purchased Different Items," (Opp. at 7-9),

8    but this argument misses the point.  She has not stated a claim as to brand-name

9    products.  Plaintiff conflates standing to represent class members who purchased

10   other items, and stating a claim.  Stein Mart does not dispute, at this time, that she

11   can conduct discovery as to private label products she did not buy.  It only denies

12   her entitlement to pursue a claim on behalf of persons who bought a separate class

13   of merchandise – brand-name goods – as to which she has never stated a claim.

14     Another court in this district recently recognized that alleging facts about

15   private label items did not permit a Plaintiff to pursue claims as to brand-name

16   items.  In *Barber v. DSW*, Case No. 8:15-cv-02024-JGB-SP (C.D. Cal April 4,

17   2016)[2], the plaintiffs claimed that DSW's "Compare At" prices were deceptive,

18   both for brand-name and private label items.  The *Barber* plaintiffs made nearly

19   identical allegations as to private-label items as Sperling does: that those items

20   were sold exclusively by DSW, and therefore could not have been sold elsewhere

21   for their "Compare At" prices.  However, the *Barber* plaintiffs had purchased only

22   brand-name items.  The court dismissed their action, finding that the plaintiffs'

23   claims as to private label items were insufficient to state a claim as to the brand-

24   name items that they purchased.  The plaintiffs could not state a claim as to brand-

25   name items by alleging that "an unspecified number of Defendant's products are

26   exclusively sold at Defendant's stores for their listed sales price and that

27   Defendant's comparative reference prices for these products, by definition, cannot

28   _____

[2] For this Court's convenience, a copy of this Order is attached as Exhibit A.

1  reflect prices offered by other retailers." *Id*. at 7.  Like in *Barber*, Plaintiff here has

2  not stated a claim as to brand-name merchandise, regardless of her claims as to

3  private label items.

4        The cases cited by Plaintiff—which the Opposition cites solely in support of

5  her standing argument—do not support her entitlement to discovery of brand-name

6  merchandise.  Two of the cases—*Branca v. Nordstrom, Inc.,* 2015 WL 10436858

7  (S.D. Cal., Oct. 9, 2015) and *Jacobo v. Ross Stores, Inc.,* 2016 WL 3482041 *6

8  (C.D.Cal. Feb. 23, 2016)—make clear that standing and ability to state a claim are

9  two separate issues.   Moreover, both cases, plus *Chester v. TJX*, support Stein

10  Mart's position that Plaintiff has not stated a claim as to brand-name products.

11        In *Jacobo I* and *Branca I*, the courts found that the plaintiff had standing to

12  sue on behalf of products they had not purchased, but found that the plaintiff failed

13  to state a claim as to any products.  *Jacobo*, 2016 WL 3482041, at *7 (C.D. Cal.

14  Feb. 23, 2016) ("*Jacobo I*"); *Branca*, 2015 WL 10436858, at *3-4 (S.D. Cal. Oct.

15  9, 2015) ("*Branca I*").  Later, in *Jacobo II*, the plaintiffs were later able to survive

16  the defendant's motion to dismiss the Second Amended Complaint specifically

17  because plaintiffs sufficiently alleged facts to show that "**no other retailer offers**

18  **for sale the items Plaintiffs purchased from Defendant's stores**." *See Jacobo*,

19  2016 WL 3483206 at *2-*3 (C.D. Cal., June 17, 2016) (noting plaintiff's factual

20  allegations concerning his pre-suit investigation into the accuracy of defendant's

21  'Compare At' prices) ("*Jacobo II*").  In *Branca II*, the Court's decision to allow the

22  plaintiff to proceed was based on the fact that the plaintiff sufficiently alleged that

23  "Nordstrom never sold nor intended to sell the items he purchased in

24  [Nordstrom's] mainline stores, **no other stores ever sold the items, and thus**

25  **there could not be a legitimate 'former price' or a prevailing market price for**

26  **the items.**" *Branca II*, 2015 WL 10435858 at *1 (emphasis added).

27        Similarly, in *Chester v. TJX*, the plaintiffs explicitly alleged that the

28  reference prices on each of their individual purchases "was not bona fide," "never

existed" and "did not…constitute the prevailing market retail prices for such merchandise." *See* Consolidated Complaint in *Chester v. TJX*, Case No. 5:15-cv-01437-ODW (S.D. Cal., Dkt. 28 at ¶¶ 125, 142, 148, 150, 158, 160,168, 170, 178.)

Thus, the Plaintiffs in *Branca*, *Chester*, and *Jacobo* were able to do exactly what Plaintiff has been unable to do here—state a claim with regard to each product at issue.[3]

To the extent that standing analysis is relevant to the question of whether Plaintiff has stated a claim—which it is not—*Miller v. Ghirardelli*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) (cited repeatedly by the Opposition) makes clear that the fact that a given representation might be similar across products is not sufficient to establish standing.  To the contrary:  the *Miller* court found that although the representations at issue were similar across a series of products, the plaintiff did not have standing to sue on behalf of products he did not purchase, in part because "the products are too different."  *Id.* at 872.[4]  The Court specifically distinguished cases where "where similar products or similar misrepresentations injured [the plaintiff] in the same way as the unnamed plaintiffs."  Id. at 870.  Here, like in

---

[3] Even if these cases could be construed to allow a claim for fraud to go forward where the plaintiff failed to plead facts demonstrating falsity, they would be inconsistent with binding 9th Circuit precedent holding the opposite.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s particularity requirement applies to California's consumer protection statutes, the UCL, and CLRA); *In re GlenFed Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)("[A] plaintiff must set forth what is false and misleading about a statement, and why it is false.").

[4] This reasoning is in-line with a series of other cases which have required a plaintiff to show that the product she purchased is "substantially similar" to the other products for which she purports to bring claims. *See, e.g. Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 2285221, at *3 (N.D. Cal. 2013) (plaintiff lacked standing to bring claims as to tea varieties containing different ingredients from tea purchased by plaintiff, because whether or not the challenged statement constituted a misrepresentation depended on the type of plant and the plaintiff's claim was therefore dissimilar across those two classes of tea.); *Bruton v. Gerber Prods.*, 961 F.Supp.2d 1134 (N.D.Cal.2014) (dismissing claims regarding specific categories of unpurchased products that she determined were not "substantially similar to any of the Purchased Products."); *Kane v. Chobani, Inc.*, No. 12–2425, 2013 WL 5289253, at * 11 (N.D.Cal. 2013) ("Although the alleged *misrepresentations* appear to be similar across all Defendant's products ... Plaintiffs do not allege facts sufficient to show that the products Plaintiffs did not purchase are 'substantially similar' to those that they did.").

Sedgwick LLP

*Miller*, and unlike in *Branca* and *Chester* (*see* Opp. at 7, "the composition of the products is of lesser importance"), the differences between brand-name and private label items prevent Plaintiff's private label theory from applying to items with brand-names.

### 3. Plaintiff Does Not Dispute that the Adequacy of Stein Mart's Disclosure is Irrelevant to the Motion for Protective Order

Stein Mart's Motion for Reconsideration also argues that the Magistrate Judge "erred by considering the adequacy of Stein Mart's 'Fair Pricing Policy' disclosure when determining if this case should be limited to private label items." (Dkt. 77, at 8.) Plaintiff does not seriously dispute this, and does not contend that the disclosure's adequacy, or lack thereof, has any bearing on whether Plaintiff has ever pled facts to show the falsity of "*Compare At" pricing on brand-name items.

### 4. Defendant has Not "Refused" to Produce Representative Samples, as Plaintiff Suggests

Finally, Plaintiff makes the cursory and misleading statement that Stein Mart has "refused" to accept Plaintiff's proposal to produce a representative sample of documents. Plaintiff tells only half the story. Stein Mart has repeatedly offered to produce to Plaintiff a sample of documents relating to Stein Mart's proprietary, private label merchandise, and has repeatedly solicited Plaintiff's counsel for a proposal on how to identify such a "representative sample" – to which Plaintiff's counsel has never responded. Stein Mart has only declined to produce documents about goods that are outside the scope of this case: its national, brand-name merchandise. Such materials are not relevant to the only viable claim in her TAC.

///

////

////

////

///

Sedgwick LLP

1

**IV.    CONCLUSION**

2      Plaintiff wants discovery in connection with a claim she has never stated, but

3  this is precisely the harm that the Rule 9(b) guards against.  Stein Mart respectfully

4  requests that the Court reverse Magistrate Judge Kato's decision, and grant it a

5  Protective Order against discovery regarding brand name items.

6

7  DATED: February 13, 2017          SEDGWICK LLP

8

9                            By: /s/ *Stephanie Sheridan*
                                 STEPHANIE A. SHERIDAN
10                               ANTHONY J. ANSCOMBE
                                 MEEGAN B. BROOKS
11                               Attorneys for Defendant
                                 STEIN MART, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 15-2024-JGB (SPx)** | Date | April 4, 2016 |
|---|---|---|---|

| Title | ***Melanie Barber et al. v. DSW Inc.*** |
|---|---|

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiffs: | Attorney(s) Present for Defendant: |
|---|---|
| Jeffrey Kaliel<br>Scott Edebberg | Stephanie A. Sheridan |

**Proceedings:** **Order (1) GRANTING Defendant DSW, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint WITH LEAVE TO AMEND (Doc. No. 13); and (2) DENYING Defendant DSW, Inc.'s Motion to Strike Nationwide Class Claims as MOOT (Doc. No. 15) (IN CHAMBERS)**

Before the Court are two motions filed by defendant DSW, Inc. ("Defendant"): (1) a Motion to Dismiss Plaintiffs Melanie Barber and Michael Yang's (collectively "Plaintiffs") First Amended Complaint (Doc. No. 13); and (2) a Motion to Strike Nationwide Class Claims (Doc. No. 15). After considering all papers timely filed in support of and in opposition to the motions and the arguments of counsel, the Court: (1) GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND; and (2) DENIES Defendant's Motion to Strike Nationwide Class Claims as MOOT.

## I. BACKGROUND

### A. Procedural History

On December 4, 2015, Plaintiffs filed a putative class action Complaint against Defendant. (Doc. No. 1.) The Complaint alleges Defendant engaged in deceptive advertising practices when selling products at its stores. (Id.) In the Complaint, Plaintiffs purport to represent a class of individuals who "purchased a DSW Outlet Product from a DSW Outlet." (Id. ¶ 45.) On January 12, 2016, Plaintiffs filed a First Amended Complaint ("FAC") against Defendant, arising from similar allegations. (Doc. No. 7.)

On February 12, 2016, Defendant filed its Motion to Dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b). ("MTD," Doc. No. 13.) In support, Defendant filed a Request for Judicial Notice of five exhibits.[1] (Doc. No. 14, 14-1, 14-2, 14-3, 14-4, 14-5.) On March 14, 2016, Plaintiffs filed an Opposition to the Motion. ("MTD Opp.," Doc. No. 22.) In support, Plaintiffs submitted: (1) four documents filed in related cases in the Central District of California and the Eastern District of Wisconsin; and (2) declarations by Melanie Barber and Michael Yang. (Doc. No. 22.) On March 21, 2016, Defendant filed a Reply. ("MTD Reply," Doc. No. 24.)

Also on February 12, 2016, Defendant filed a Motion to Strike Nationwide Class Claims and a supporting exhibit, pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D). (Doc. No. 15, 15-1.) On March 14, 2016, Plaintiffs filed an Opposition to the Motion. (Doc. No. 21.) On March 21, 2016, Defendant filed a Reply. (Doc. No. 23.)

On April 4, 2016, the Court held a hearing on both motions and considered the arguments of counsel.

## B. Allegations in the FAC

### 1. General Allegations

Defendant sells shoes and various accessories at 45 stores in California. (FAC ¶¶ 1 n.1, 24.) According to the FAC, Defendant has misrepresented the "existence, nature and amount of price discounts on products (a) exclusively sold at [Defendant's] stores and (b) products sold at [Defendant's] stores] and other similar retail stores . . . ." (Id. ¶ 2.) Specifically, Defendant places a misleading "Compare At" price tag next to many of its products, stating Defendant's selling price and a much higher comparative reference price. (Id. ¶ 3.) The "Compare At" price tags indicate the comparative reference price reflects either the manufacturer's suggested retail price, a former price offered for the product, or prices for the products offered by other sellers. (Id. ¶¶ 5-6, 35, 39.) Defendant also prints the difference between the sales price and the

---

[1] Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take notice of federal and state judicial decisions. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citation omitted).

In its Request for Judicial Notice, Defendant asks the Court to take notice of various judicial decisions and sources of law supporting its contentions. The judicial decisions and sources of law in question are proper subjects of judicial notice. See id. Accordingly, the Court GRANTS Defendant's Request for Judicial Notice.

---

**CIVIL MINUTES—GENERAL**

comparative reference price next to the words "You Saved" on receipts given to a consumers upon purchase of a product, corroborating the notion that consumers are receiving a good bargain by purchasing the product from Defendant. (Id. ¶¶ 8-9, 11.) In reality, however, some of Defendant's products are sold exclusively at Defendant's stores at their listed sales price and are never sold at the higher comparative reference price. (Id. ¶¶ 5-6.) Moreover, the advertised comparative reference price is not the "prevailing market retail price[] within three months immediately preceding the publication of the advertised price[]." (Id. ¶ 12.) Hence, "the 'Compare At' prices listed on [Defendant's] [p]roducts are fictional creations designed by [Defendant] to portray false price information, enable phantom markdowns and increase sales." (Id. ¶ 7.)

Furthermore, the FAC alleges Defendant's stores convey the false impression that they sell "merchandise formerly offered for sale at full-price retail locations." (Id. ¶¶ 30-31.) In actuality, Defendant sells "made-for-outlet goods that are never intended to be sold at non-outlet stores." (Id. ¶ 29.)

## 2. Allegations Specific to Plaintiffs

The FAC claims Melanie Barber ("Barber") purchased one of Defendant's products from Defendant's store in Orange, California in July 2015. (Id. ¶ 22.) Barber purchased a pair of Guess Women's Sandals, bearing a "Compare At" price of $59.00 and a sales price of $34.94. (Id. ¶ 35.) Barber understood the "Compare At" price tag to represent that the sales price for the product was "more preferential or more optimal . . . than those offered outside the context of the outlet store." (Id.) According to the FAC, the "Compare At" price listed for the Guess Women's Sandals was false and Barber would not have purchased the product or would not have paid the listed sales price if she "had known she was not truly receiving a bargain." (Id. ¶¶ 36-37.)

Michael Yang ("Yang") purchased two of Defendant's products from Defendant's store in Cosa Mesa, California on June 26, 2015 and November 18, 2015. (Id. ¶ 23.) On June 26, 2015, Yang purchased a pair of Penguin Men's Casual Shoes, bearing a "Compare At" price of $125.00 and a sales price of $69.95. (Id. ¶ 38.) On November 18, 2015 Yang purchased one Men's Belt, bearing a "Compare At" price of $35.00 and a sales price of $19.95. (Id. ¶ 39.) Yang understood the "Compare At" tag for the products to represent that the sales price for the products was "more preferential or more optimal . . . than those offered outside the context of the outlet store." (Id.) The FAC alleges the "Compare At" price listed for both products was false and Yang would not have purchased them or would not have paid their listed sales price if he "had known he was not truly receiving a bargain." (Id. ¶¶ 40-41.) The FAC claims Plaintiffs would purchase Defendant's products in the future if their product labels "accurately reflect discounts and bargains." (Id. ¶ 43.)

## 3. Causes of Action

Based on the foregoing factual allegations, the FAC asserts the following seven claims arising out of Defendant's allegedly false advertising practices: (1) unfair business practices, in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq; (2) fraudulent business practices, in violation of the UCL; (3) unlawful business practices, in violation of the UCL; (4) false advertising, in violation of the California False Advertising Law

("FAL"), Cal. Bus. & Prof. Code § 17500, et seq; (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq; and (6) two claims for unjust enrichment. (FAC at 13-24.) The FAC also alleges Defendant has violated the Federal Trade Commission Act and various regulations promulgated by the Federal Trade Commission. (Id. ¶¶ 12-13, 20, 78-79.) The FAC does not assert a separate claim based on these violations, but merely predicates its unlawful business practices claims on them. (See id.)

Plaintiffs assert the foregoing claims on behalf of a "Proposed Class" consisting of "[a]ll persons who, within the applicable statute of limitations preceding the filing of this action, purchased a DSW Outlet Product from a DSW Outlet."[2] (Id. ¶ 45.) The FAC requests an order certifying that this action may be maintained as a class action, damages, and injunctive relief. (Id. at 24.)

## II. LEGAL STANDARD

### A. Dismissal of Pleadings Under Federal Rules of Civil Procedure 12(b)(6) and 9(b)[3]

Rule 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint

---

[2] Although the FAC implies the Proposed Class is a nationwide class, it contains no allegations indicating Defendant sells products outside of California.

[3] Subsequent references to "Rules" refer to the Federal Rules of Civil Procedure.

pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 9(b) presents heightened pleading requirements for plaintiffs alleging fraud or mistake.[4] In alleging fraud or mistake, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In general, the plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 1106. This heightened pleading standard requires the plaintiff to allege fraud or mistake by detailing "the who, what, when, where, and how" of the misconduct charged. Id. at 1106-07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. See id.

## B. Motions to Strike

Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the Court must determine whether the matter the moving party seeks to have stricken is: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74.

## III. DISCUSSION

### A. Defendant's Motion to Dismiss

#### 1. Plaintiffs' FAL, UCL, and CLRA Claims

Defendant argues the FAC must be dismissed because the FAC fails to satisfy the heightened pleading requirements applicable to Plaintiffs' FAL, UCL, and CLRA claims under Rule 9(b). (MTD at 7-14.) Defendant notes Plaintiffs allege that Defendant's comparative reference prices for many of its products are inaccurate because these products are sold

---

[4] Neither party disputes that Rule 9(b)'s heightened pleading requirements apply to the FAC's FAL, UCL, and CLRA claims.

exclusively at Defendant's stores for their listed sales price. (Id. at 10-12.) Defendant argues the FAC does not allege any facts supporting this proposition. (Id.) In particular, Defendant notes the FAC does not allege the products actually purchased by Plaintiffs were sold exclusively at Defendant's stores for their listed sales price. (See MTD Reply at 1-2.) Plaintiffs respond the FAC's allegations are sufficient to state a claim under Rule 9(b). (MTD Opp. at 12-14.) The Court addresses the parties' contentions below.

### a. California's FAL, UCL, and CLRA

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs. Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." Hinojos, 718 F.3d at 1103. Accordingly, any violation of the FAL also violates the UCL. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)).

Finally, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, the CLRA prohibits, among other things, "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

### b. The Reasonable Consumer Test

To state a claim under the FAL, UCL, or the CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams, 552 F.3d at 938 (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'").

CIVIL MINUTES—GENERAL          Initials of Deputy Clerk MG
                                                          Time: 00:20

"A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" <u>Davis</u>, 691 F.3d at 1161-62 (quoting <u>Colgan v. Leatherman Tool Group, Inc.</u>, 135 Cal. App. 4th 663 (2006)). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." <u>In re Sony Gaming Networks & Customer Data Sec. Breach Litig.</u>, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting <u>Lavie v. Procter & Gamble Co.</u>, 105 Cal. App. 4th 496, 508 (2003)).

### c.  Analysis

Plaintiffs have not alleged sufficient facts supporting claims under the FAL, UCL, and CLRA.  In the FAC, Plaintiffs appear to claim Defendants' comparative reference prices for its products are misleading because they do not accurately reflect any of the following three prices: (1) the manufacturer's suggested retail price, (2) a former price offered by Defendant, or (3) a price offered by other retailers.  (FAC ¶¶ 5-6, 35, 39.)  In support of these theories of liability, the FAC alleges an unspecified number of Defendant's products are exclusively sold at Defendant's stores for their listed sales price and that Defendant's comparative reference prices for these products, by definition, cannot reflect prices offered by other retailers.  (<u>Id.</u> ¶¶ 2, 5-6.)

In their Opposition to Defendant's Motion to Dismiss, Plaintiffs also claim some of Defendant's products are exclusively sold by Defendant and other "off-retail" stores.  (MTD Opp. at 1, 3-4, 12-13.)  Plaintiffs argue Defendant's comparative reference prices for these products are inaccurate for an additional reason: they do not reflect the prices offered for such products at off-retail stores.  (<u>Id.</u>)

The FAC does not allege sufficient facts supporting any of these theories of liability.  First, the FAC only provides conclusory allegations that Defendant's comparative reference prices for its products do not reflect the manufacturer's suggested retail price or former prices offered by Defendant.  Second, the FAC does not allege the products purchased by Plaintiffs in June, July, and November 2015 were exclusively sold at Defendant's stores.  Lastly, the FAC does not allege the products purchased by Plaintiffs were sold by "off-retail" stores at prices different from those on Defendant's "Compare At" labels.  As a result, the FAC's claims regarding the inaccuracy of the products' comparative reference prices are conclusory and lack any factual support.  Hence, Plaintiffs fail to state claims under the FAL, UCL, and CLRA.  <u>See Branca v. Nordstrom, Inc.</u>, No. CV 14-2062-MMA (JMA), 2015 WL 1841231, at *6 (S.D. Cal. Mar. 20, 2015) (holding plaintiff's conclusory allegations that defendants' "Compare at" rates were fictional amounts selected to "advertise phantom markdowns" to be insufficient under Rule 9(b)); <u>Mahfood v. QVC, Inc.</u>, No. SACV 06–0659 AG, 2007 WL 9363986 at *4 (C.D. Cal. Feb. 7, 2007) (concluding plaintiff's conclusory allegations that defendant's comparative reference

prices did not reflect prevailing market prices, did not satisfy heightened pleading burden under Rule 9(b)).[5]

Accordingly, the Court GRANTS Defendant's Motion to Dismiss insofar as it pertains to Plaintiffs' claims under the FAL, UCL, and CLRA.

## 2. Plaintiffs' Unjust Enrichment Claims

Plaintiffs' unjust enrichment claims are based on allegations Defendant "deceptively priced, marketed, advertised, and sold [its] [p]roducts" and was unjustly enriched as a result. (FAC ¶¶ 97, 99, see also id. ¶¶ 107-08.)  Plaintiffs claim these practices violated both California law and the consumer protection laws of forty states and the District of Columbia.  (Id. ¶¶ 95, 105.)  Defendant argues Plaintiffs' two unjust enrichment claims are subject to dismissal because they are based on the same allegations as Plaintiffs' claims under the FAL, UCL, and CLRA. (MTD at 14-16.)

Plaintiffs also fail to sufficiently state an unjust enrichment claim.  Plaintiffs' unjust enrichment claims are based on the same allegations of deceptive advertising as their claims under the FAL, UCL, and CLRA.  The FAC does not contain sufficient factual allegations indicating the products purchased by Plaintiffs from Defendant's stores had deceptive comparative reference prices.  Consequently, Plaintiffs have failed to state a claim for unjust enrichment.  See Peterson v. Cellco Partnership, 164 Cal. App. 4th 1583, 1595 (2008) (rejecting plaintiffs' unjust enrichment claim because it was predicated on the same allegations as their other meritless claims).

## 3. Leave to Amend is Granted

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court, however, may in its discretion deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (internal citation and quotation marks omitted).

---

[5] Plaintiffs claim a number of state and federal decisions in factually analogous cases demonstrate they state viable FAL, UCL, and CLRA claims in the FAC.  In particular, Plaintiffs direct the Court to a subsequent decision by the district court in October 2015 in Branca v. Nordstrom, Inc., after its initial dismissal of the plaintiff's amended complaint for failure to satisfy Rule 9(b)'s heightened pleading requirements.  (MTD Opp. at 9-10.)  In its subsequent order in Branca, the court found the plaintiff had stated claims under the FAL, CLRA, and UCL based on allegations that the defendant had listed false comparative reference prices on products purchased by the plaintiff.  See Branca v. Nordstrom, Inc., No. CV 14-2062-MMA (JMA), 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015).  In Branca, unlike here, the plaintiff appears to have alleged the comparative reference prices for the products were false because the products were sold exclusively by the defendant for their listed sales price.  See id. at *1, *7.

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG
Time:  00:20

Here, Plaintiffs have not engaged in undue delay, manifested bad faith, or had any prior opportunities to amend their complaint, nor would amendment cause undue prejudice to Defendant. Moreover, amendment of Plaintiffs' claims to include further supporting factual allegations would not be futile. Hence, the Court GRANTS Plaintiffs leave to amend.

### B. Defendant's Motion to Strike Nationwide Class Claims

Defendant also requests that the FAC's nationwide class-related allegations be stricken. Because the Court grants Defendant's Motion to Dismiss the FAC, Defendant's Motion to Strike Nationwide Class Claims is moot. Accordingly, Defendant's Motion to Strike Nationwide Class Claims is DENIED.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND and DENIES Defendant's Motion to Strike Nationwide Class Claims as MOOT. The Court DISMISSES Plaintiffs' First Amended Complaint WITH LEAVE TO AMEND.

Plaintiffs shall file a Second Amended Complaint, if any, by May 2, 2016.

**IT IS SO ORDERED.**