STEPTOE & JOHNSON LLP
STEPHANIE A. SHERIDAN, State Bar No. 135910
ssheridan@steptoe.com
ANTHONY J. ANSCOMBE, State Bar No. 135883
aanscombe@steptoe.com
MEEGAN B. BROOKS, State Bar No. 298570
mbrooks@steptoe.com
Steuart Tower, 1 Market St #1800
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6678

Attorneys for Defendant
STEIN MART, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARILYN SPERLING and JERRED SCHUH, individuals; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEIN MART, INC.,<br><br>Defendant. | Case No. 5:15-cv-01411-AB-KK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT STEIN MART, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Judge:  Hon. André Birotte, Jr.<br>Date:  Friday, February 16, 2018<br>Time:  10:00 a.m._<br>Courtroom: 7B – First Street |

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II. FACTUAL BACKGROUND .................................................................2

    A. Stein Mart and Its Customers.................................................2

    B. Stein Mart Pricing ..................................................................2

    C. Stein Mart's "*Compare At" Prices.......................................3

    D. Plaintiffs and Their Purchases ...............................................5

        1. Marilyn Sperling ..........................................................5

        2. Jerred Schuh................................................................7

    E. Stein Mart's Expert Evidence ................................................8

        1. Stein Mart Customers' Perceptions About *Compare At Prices .8

        2. *Compare At Prices Do Not Cause Economic Loss to Plaintiffs or other Stein Mart Customers...................................10

III. LEGAL STANDARDS .....................................................................11

IV. ARGUMENT ..................................................................................13

    A. Stein Mart's *Compare At Prices Are Not Deceptive to Reasonable Consumers of the Target Audience, and Plaintiffs Have No Admissible Evidence to Satisfy Essential Elements of Their Claims......................13

        1. The Phrase "*Compare At" Is Neither Material Nor Deceptive 13

        2. The "*Compare At" Prices on Plaintiffs' Purchases Were Not False, and Plaintiffs Have No Evidence To the Contrary ..........14

    B. Plaintiffs' CLRA Claims Fail Because a *Compare At Price Is Not a "Price Reduction" ....................................................................16

    C. Plaintiffs' "Unlawfulness" Claim Fails Because Stein Mart Has Not Broken the Law .............................................................................17

    D. Plaintiffs' Claims for Restitution Fail Because They Have Not Lost Money ............................................................................20

1    E.    Plaintiffs Cannot Obtain Injunctive Relief ........................................... 23

2    F.    Schuh's Deemed Admissions Require Entry of Summary Judgment .. 23

3  V.    CONCLUSION .............................................................................................. 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aloudi v. Intramedic Research Grp., LLC*,
   No. 16-15876, 2017 WL 6397259 (9th Cir. Dec. 15, 2017) ................................ 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................... 11, 12

*Ash Grove Cement Co. v. FTC*,
   577 F.2d 1368 (9th Cir. 1978) ................................................................................ 19

*Caldera v. J.M. Smucker Co.*,
   No. CV 12-4936-GHK VBKX, 2014 WL 1477400
   (C.D. Cal. Apr. 15, 2014) ................................................................................ 23

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................ 24

*Curten v. Recontrust Co.*,
   No. CV 12-9565-JFW, 2013 WL 12081084
   (C.D. Cal., Jan. 23, 2013) ................................................................................ 19

*Dreisbach v. Murphy*,
   658 F.2d 720 (9th Cir. 1981) ................................................................................ 18

*Ebner v Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................................ 13, 20

*Expressions Hair Design v. Schneiderman*,
   137 S.Ct. 1144 (2017) ................................................................................ 24

*F.T.C. v. Garvey*,
   383 F.3d 891 (9th Cir. 2004) ................................................................................ 19

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................................ 12

*GTE Directories Corp. v. McCartney*,
   11 F. App'x 735 (9th Cir. 2001) ................................................................................ 25

*Italian Colors Rest. v. Becerra*,
No. 15-15873, 2018 WL 266332 (9th Cir. Jan. 3, 2018) ...................................... 24

*Jacobo v. Ross Stores, Inc.*,
No. CV-15-04701-MWF-AGR, 2017 WL 3382053
(C.D. Cal. Aug. 2, 2017) ........................................................... 14, 17, 19, 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ................................................................................ 21

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ..................................................................... 15

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .................................................................................. 12

*Laster v. T-Mobile USA, Inc.*,
No. 05-cv-1167, 2009 WL 4842801 (S.D.Cal. Dec. 14, 2009) ........................... 20

*Laster v. T-Mobile USA, Inc.*,
466 F. App'x 613 (9th Cir. 2012) ................................................................. 20

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ....................................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................... 11

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) ....................................................... 18, 19

*Morales v. Kraft Foods Grp., Inc.*,
No. LACV14-04387-JAK-PJW, 2017 WL 2598556
(C.D. Cal. June 9, 2017) ............................................................................... 23

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
107 Cal. App. 4th 1336 (2003) ..................................................................... 15

*Nelson v. Am. Home Mortg. Servicing, Inc.*,
No. CV 10-4562 GAF, 2010 WL 3034233 (C.D. Cal. Jul. 29, 2010) ................. 19

*O'Donnell v. Bank of Am, Natl. Assn.*,
504 Fed. Appx. 566 (9th Cir. 2013) ............................................................. 18

*Ocasio v. Las Vegas Metro. Police Dep't,*
   10 F. App'x 471 (9th Cir. 2001) .......................................................................... 24

*In re Oracle Corp. Sec. Litig.,*
   627 F.3d 376 (9th Cir. 2010) ............................................................................... 12

*Perez v. Nidek Co.,*
   711 F.3d 1109 (9th Cir. 2013) ............................................................................. 20

*Pollard v. Ericsson, Inc.,*
   125 Cal. App. 4th 214 (2004) .............................................................................. 16

*Pratt v. Whole Foods Market California, Inc.,*
   No. 12-cv-05652 EJD, 2014 WL 1324288
   (N.D. Cal. Mar. 31, 2014) ................................................................................... 20

*Rahman v. Mott's LLP,*
   No. 13-cv-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ......................... 14

*Sperling v. DSW,*
   699 F. App'x 654 (9th Cir. 2017) ........................................................................ 16

*Sperling v. DSW Inc.,*
   2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ........................................................ 19

*Sperling v. DSW Inc.,*
   No. 5:15-cv-01366 (C.D. Cal. July 8, 2015) ......................................................... 7

*State v. Amoco Oil Co.,*
   97 Wis.2d 226 (1980) .......................................................................................... 19

*Stathakos v. Columbia Sportswear Co.,*
   No. 15-cv-04543, 2017 WL 1957063 (N.D. Cal. May 11, 2017) ........................ 23

*In re Tobacco Cases II,*
   240 Cal. App. 4th 779 (2015) ................................................................... 21, 22, 24

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ............................................................................. 12, 21, 22

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
   425 U.S. 748 (1976) ............................................................................................ 24

*Wang v. Massey Chevrolet,*
   97 Cal. App. 4th 856 (Cal. Ct. App. 2002) .......................................................... 17

*Wohl v. Cty. of Los Angeles*,
    225 F. App'x 676 (9th Cir. 2007)...........................................................................25

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)..............................................................13

**Statutes**

9 AAC 05.020 ..................................................................................................................17

16 C.F.R. § 1.5 ................................................................................................................19

Cal. Bus. & Prof. Code § 17200 ..............................................................................12, 16

Cal. Bus. & Prof. Code § 17203 ...................................................................................24

Cal. Civ. Code § 1770(a)(13) ..........................................................................12, 17, 23

Cal. Civ. Code §1780(a)(2) ...........................................................................................24

D.C. Code § 28–3904(j)..................................................................................................17

Fed. R. Civ .P. 56(c) .......................................................................................................11

Federal Trade Commission Act, 15 U.S.C. §45(a)(1)................................................17

Federal Trade Commission Act, 15 U.S.C. §52(a)....................................................17

K.S.A. 50-626(b)(7)........................................................................................................17

Md. Code Ann. Com. Law § 13-301 ...........................................................................17

NYC Admin. Code § 20-701(a)(6)...............................................................................17

**Other Authorities**

5 J. Thomas McCarthy, Trademarks and Unfair Competition,
    § 27:119 (4th ed. 2017) ..........................................................................................18

29 Fed. Reg. 178 (1964) ................................................................................................19

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Marilyn Sperling and Jared Schuh know precious little about Stein Mart shoppers.  They have brought this action in the mistaken belief that other shoppers do not understand the "*Compare At" reference prices listed on the price tags of merchandise sold at Stein Mart.  Plaintiffs contend that Stein Mart hoodwinks customers into buying merchandise by listing higher "*Compare At" prices next to a lower "Our Price," so that the customers will believe that they are getting a bigger bargain than they actually are.  Plaintiffs have not asserted any claim for damages, but seek restitution consisting of a refund or disgorgement of profits.

This Court should enter summary judgment in favor of Stein Mart.  Not only do Plaintiffs have no evidence to demonstrate that Stein Mart's use of "*Compare At" pricing is deceptive to Stein Mart shoppers, Stein Mart has itself come forward with indisputable survey evidence that "*Compare At" prices make no discernible difference to customers' purchase decisions.  Consumers are not misled by phrases like "Compare At" or "Comparable Value."  To the extent that Stein Mart customers consider price in making purchase decisions, they rely on their own market experience, and in fact, affirmatively distrust external reference prices provided by retailers.

Plaintiffs, moreover, have no evidence that they have lost money or property as the result of any "unfair" business practice, or that Stein Mart has obtained their money through deceptive means.  Plaintiffs obtained value from their purchases commensurate with what they paid, and have lost nothing.  Any recovery would be pure windfall and contrary to principles of equity.

And if these defects did not already provide a bedrock foundation for summary judgment, the undisputed evidence also demonstrates that Stein Mart's *Compare At prices are not false.  They are, in fact, real prices charged by other retailers for the same or similar merchandise.  Plaintiffs have proffered no evidence to the contrary, and cannot meet their burden to prove the most basic fact underlying their claims.

## II.   FACTUAL BACKGROUND

### A.   Stein Mart and Its Customers

Founded in 1908, Stein Mart Inc. operates retail stores across the United States, including approximately twenty-six stores in California.  Stein Mart sells high quality merchandise, often found at department stores, specialty stores, or other high-end retailers.  It features a wide selection of fashion clothing, accessories, household goods, and electronics.  (*See* Stein's Mart's Statement of Uncontroverted Facts and Conclusions of Law ("SUMF") (Dkt. #101-1) ¶1.)  Stein Mart strives to have lower overhead than its competitors, such as by locating its stores in less expensive retail centers and staffing its stores leanly.  (SUMF ¶2.) This model allows it to pass savings to customers through everyday low prices, which are typically lower than those charged by competitors for the same or similar merchandise.  (SUMF ¶¶1-2, 6.)

Most clothing retailers have their own distinctive target demographic and customer base.  (SUMF ¶3.)  Stein Mart customers are predominantly female, mature (average age over 50), and comparatively affluent (average household income over $75,000).  (SUMF ¶4.)  Stein Mart's customer base is fashion conscious, experienced at shopping, and appreciates value.  (SUMF ¶5.)

### B.   Stein Mart Pricing

Stein Mart provides everyday low pricing.  (SUMF ¶1-2, 6.)   Like other retailers, Stein Mart engages in some special promotional events, where it offers reduced prices storewide for durations of 12 to 36 hours.  Also like other retailers, Stein Mart marks down its merchandise as inventory ages, eventually putting goods on clearance pricing.   But Stein Mart strives to set its initial prices at levels that will give its customers an incentive to shop at Stein Mart every day.  (SUMF ¶7.)

Stein Mart's "Buyers" manage product assortment, inventory and pricing.  (SUMF ¶8) Stein Mart assigns different Buyers to different business segments.  Buyers meet with suppliers to select merchandise and negotiate commercial terms.  Purchases from suppliers typically occur anywhere from several months to a year before inventory

hits the retail floor.  The company sets financial goals for different product lines, and Buyers set the goods' every day prices at levels that will meet those goals.  (SUMF ¶8, 10.)

As a general matter, Stein Mart prices virtually all merchandise below the manufacturers' suggested retail prices (MSRPs).  Stein Mart receives MSRPs from its suppliers, who will often provide the names of other retailers that actually charge those MSRPs.  (SUMF ¶11-12.)  These suppliers are knowledgeable about the market for their own goods, and have visibility as to what their customers will charge because they often also print their customers' price tags.  (SUMF ¶13.)

But Stein Mart's Buyers do not rely exclusively on suppliers for information about competitive conditions.  Rather, Buyers and their teams of Assistant Buyers pay careful attention to market conditions.  (SUMF ¶14.) Through "comparison shopping" (also known as "competitive shopping," "competitor shopping," or "comp shopping"), Stein Mart's Buyers continually monitor the prices charged by their competitors.  (*Id.*) For example, Michele Berrigan-Dreicer, who oversees men's tailored suits, luggage, electronics, gifts, and Stein Mart's Alan Flusser brand, has testified that she devotes approximately 25% of her time monitoring competitive prices.  (*Id.*)  She visits brick and mortar stores in important national retail hubs, like New York, and in other cities. (*Id.*) She continually monitors prices online, to ensure that Stein Mart has priced its goods below what other leading retailers demand.  (*Id.*)

**C.  Stein Mart's "*Compare At" Prices**

This action centers on Stein Mart's practice of displaying a "*Compare At" price on price tags, and in print advertising, right above Stein Mart's "Our Price".  Stein Mart's tags follow several formats, depending on their size, but contain a *Compare At price, an "Our Price", as well as information about Stein Mart's Fair Pricing Policy (SUMF ¶15):



The asterisk that appears at the front of "*Compare At" directs customers to Stein Mart's Fair Pricing Policy, which Stein Mart posts at every register, in every store, and online. (SUMF ¶¶16, 18.)  The Policy states:

**Fair Pricing Policy**

> We strive to offer our customers true everyday value. Our "*Compare At" price is based on input from our suppliers. We believe that it represents the original price of the same item or a comparable item at department stores, specialty stores or other full-price stores. Our "*Compare At" price may not be the starting price posted by all full-price stores, and some stores may offer substantial discounts off the suggested retail price. (SUMF ¶17.)

Stein Mart's *Compare At prices are based on the MSRPs provided by their suppliers, and reflect real prices charged by other retailers for the merchandise that is either exactly the same or very similar to that offered by Stein Mart.  (SUMF ¶¶11-14, 19- 21.)  Through comparative shopping, Stein Mart's buyers confirm that these prices reflect actual prices sold at the types of stores noted in the fair pricing policy.  (SUMF ¶19.)

Plaintiffs contend that these *Compare At prices are fictitious, but they have not produced any evidence about prices charged by other retailers. (SUMF ¶30.)  Instead, they rely on several misconceptions about how the retail industry operates.   For example, they argue that *Compare At prices on items sold under Stein Mart proprietary labels must be false because other retailers do not sell the same items.  This

is incorrect.  The suppliers who sell these goods to Stein Mart often make the same goods for other retailers, to sell under their own labels.  (SUMF ¶11-14, 19-21.)  They provide MSRPs for what they expect those other retailers to charge for the items.  (SUMF ¶¶11-12.)

Plaintiffs also contend that these *Compare At prices must be false because the suppliers furnish the MSRPs several months to a year in advance, so Stein Mart cannot possibly know that other retailers will actually charge these prices.  But the retail business is seasonal and cyclical.  Stein Mart's Buyers know from experience that MSRPs provided by suppliers will, in fact, be charged when those items hit the retail floors of department stores, specialty stores, and other full price retailers.  (SUMF ¶¶9, 11-13.)   Their competitive shopping permits them to verify that *Compare At prices do, in fact, reflect prices charged by other retailers at the time they are sold.  (SUMF ¶¶14, 19-21.)

### D.    **Plaintiffs and Their Purchases**

#### 1.    **Marilyn Sperling**

Eighty-year-old Plaintiff Marilyn Sperling is an avid shopper.  Her credit card statements show that she makes anywhere from 225 to 350 transactions per year at a wide assortment of retailers, including fashion retailers (like Talbots, Nordstrom, and Banana Republic), big box stores (such as Target and Wal-Mart), discount retailers (including TJ Maxx, Marshalls, and Ross), and other retail locations excluding restaurants and grocery stores.  (SUMF ¶22.)  She makes additional purchases with cash, her preferred method of payment.  (SUMF ¶23.)

When determining whether to buy a product, Sperling generally focuses on whether she likes a product, and whether she believes it is worth the price she would pay for it.  (SUMF ¶24.)  In fact, Plaintiff admits that she can generally look at an item and tell what it is worth, without needing a "Compare At" price.  (SUMF ¶25.)

Sperling claims to have made three purchases based on her purported reliance on

1   Stein Mart's "*Compare At" price: a pair of Peck & Peck brand "Ava" pants,[1] a

2   Revelation brand suitcase, and a pair of Yellow Box shoes.  (Fourth Amended

3   Complaint ("FAC") (Dkt. #87) ¶¶140-156.)

4         Peck & Peck Ava pants are a private-label item.  Sperling allegedly bought the

5   Ava pants for $49.99 on September 14, 2014; the "*Compare At" price listed on the tag

6   was $78.00.  (FAC, ¶ 140.)  Sperling has gotten use out of the pants, and has admitted

7   that they were worth what she paid and that she could have bought the same pants

8   regardless of the "*Compare At" price.  (SUMF ¶24.)

9         Sperling contends that because Peck & Peck is a Stein Mart-exclusive brand, the

10  *Compare At price on the pants was necessarily false.  It is undisputed, however, that

11  these same pants are sold by other retailers for prices substantially in excess of $78.00.

12  (SUMF ¶¶26-27.)  Stein Mart's manufacturer explains that Stein Mart's Ava pants are

13  identical in every substantive way to pants sold elsewhere under different labels: they

14  are made using the same machines, based on the same design, and consist of identical

15  fabric and stitching quality.  (*Id.*)  The "overwhelming majority" of retailers selling

16  these pants elsewhere sell them for between $115 and $138 —that is 50% greater than

17  Stein Mart's *Compare At price, and 150% greater than what Sperling actually paid.

18  (*Id.*)

19        As for Sperling's alleged brand-name purchases—the Revelation suitcase and

20  Yellow Box shoes—Sperling has failed to provide sufficient information to permit

21  Stein Mart to identify her purchases.  (SUMF ¶28.)  Regardless, the "Compare At"

22  prices shown for Stein Mart's Revelation travel bags and Yellow Box shoes were based

23  on fact.  (SUMF ¶29.)

24        In discovery, Sperling has not provided any evidence to support her claims that

25  the *Compare At prices for these or any other Stein Mart items are false.  (SUMF ¶30.)

26  _____

27  [1] Stein Mart Buyer Paula Adams identified Sperling's pants as the "Ava" pants after reviewing photographs of the pants provided by Plaintiff and the information provided

28  in the Second Amended Complaint.  Dkt. 28-4, ¶ 3.

Relatedly, Sperling filed a nearly identical claim against shoe retailer DSW (also involving "Compare At" pricing) the same month she brought this action.[2]  The Court dismissed her action, in part, because she pled no facts to show that DSW's "Compare At" prices were false.  The 9th Circuit recently affirmed.

### 2.  Jerred Schuh

Schuh is a 34-year old disc jockey who has been living and working in Europe since May 14, 2017.  Stein Mart took his deposition on an expedited basis in May, 2017, shortly after Schuh joined this action.   On October 26, 2017, after Schuh failed to provide additional information promised during his deposition, or shortly thereafter, Stein Mart served him with interrogatories, document demands, and requests for admission. (SUMF ¶32)  Schuh has not responded to these requests, or sought relief from automatic admission mandated by Fed. R. Civ. P. 36(a)(3).  (SUMF ¶33.)  He has therefore admitted the following:

> 1.    Admit that YOU have not incurred any actual damage.

> 2.    Admit that YOU did not rely on the phrase "*Compare At" during the purchases alleged in the Fourth Amended Complaint.

> 3.    Admit that YOU read Stein Mart's "Fair Pricing Policy" before you bought the items identified in YOUR Fourth Amended Complaint.

> 4.    Admit that YOU have no reliable means to calculate the amount of restitution to which class members are allegedly entitled.

> 8.    Admit that YOU have received value in connection with the purchases alleged in the Fourth Amended Complaint. (*Id*.)

Schuh considers himself a savvy shopper, and generally bases his purchasing decisions on whether he likes an item, and if it is worth the price.  (SUMF ¶34.)

Schuh bases his complaint on his alleged purchase of a Kenneth Cole (brand name) suit jacket and pants, and an Alan Flusser (private label) shirt, which he bought

---

[2] *Sperling v. DSW Inc*., No. 5:15-cv-01366 (C.D. Cal, filed July 8, 2015), *affirmed with prejudice* 699 F. App'x 654 (9th Cir. 2017); *See also* SUMF ¶31.

1  in December of 2016 and January 2017, respectively. (FAC ¶¶157-170.) Refuting

2  Schuh's assertion that these *Compare At prices are false, Michelle Berrigan-Dreicer

3  has identified other major national retailers that charge Stein Mart's *Compare At

4  prices for these items.  (SUMF ¶¶35-36, 38-39.)

5     Schuh does not appear to have any quibble with the quality of what he bought.

6  (SUMF ¶¶37, 40.)  He likes the items he purchased.

7     **E.     <u>Stein Mart's Expert Evidence</u>**

8     Under the operative Case Management Order entered in this case on June 20,

9  2016, (Dkt. 56, at 3), expert disclosures were due 70 days before the close of discovery,

10 on December 11, 2017. *See also* Dkt. #92 (continuing discovery cut-off to February 19,

11 2018). Stein Mart supplied expert reports from two retained experts whose analysis

12 eviscerates Plaintiffs' claims.  Plaintiffs did not disclose any expert reports by the

13 deadline, and have still not done so.  (SUMF ¶50.)

14     **1.     Stein Mart Customers' Perceptions About *Compare At**

15          **Prices**

16     Stein Mart retained a leading expert in consumer research and behavior, Dr.

17 Itamar Simonson of Stanford University, to test Plaintiffs' pricing allegations and

18 assumptions and assess customers' interpretations and perceptions of *Compare At

19 prices.  Using standard and accepted survey techniques, Dr. Simonson conducted a

20 survey of over 400 Stein Mart shoppers in California and other markets where Stein

21 Mart stores are located.  He asked the shoppers a series of questions regarding their

22 clothes shopping experiences, knowledge of clothing prices, perceptions of Stein

23 Mart's prices and quality, and their familiarity with and interpretation of *Compare At

24 Prices. (SUMF ¶¶41-45.)  The survey results, set forth in Dr. Simonson's report (*Id.*),

25 refute Plaintiffs' allegations and demonstrate that the *Compare At prices do not in fact

26 cause Stein Mart shoppers to buy products they would not have otherwise purchased.

27     Key findings include that *Compare At prices do not increase Stein Mart

28 shoppers' likelihood of making a purchase at the store.  (SUMF ¶41.)  Dr. Simonson's

survey asked Stein Mart shoppers to state the likelihood that they would purchase pairs
of men's or women's slacks, with an equal number of respondents seeing the slacks
with, and without, *Compare At prices.  The two groups' willingness to purchase was
statistically indistinguishable:

|  | | TOTAL SAMPLE | | | |
| --- | --- | --- | --- | --- | --- |
|  | | With "Compare At" | | Without "Compare At" | |
|  | | Number | % | Number | % |
| q200. How likely would you be to buy one of the pairs of pants at the Stein Mart store that you just saw | Definitely buy one of these pants | 55 | 27.5% | 54 | 27.0% |
| | Probably buy one of these pants | 67 | 33.5% | 67 | 33.5% |
| | May or may not buy one of these pants | 43 | 21.5% | 42 | 21.0% |
| | Probably not buy one of these pants | 21 | 10.5% | 28 | 14.0% |
| | Definitely not buy one of these pants | 14 | 7.0% | 9 | 4.5% |
| | Don't know | 0 | 0.0% | 0 | 0.0% |
| | Total | 200 | 100.0% | 200 | 100.0% |

*Compare At prices do not lead Stein Mart shoppers to perceive Stein Mart's
prices as lower.  (SUMF ¶42.) Stein Mart Shoppers are motivated by many different
facts in making their purchase decisions. (SUMF ¶45.) Stein Mart's customers tend to
be experienced clothes buyers who are knowledgeable about prices (SUMF ¶¶43-44):

> Respondents were also asked about their ability to determine if the price
> of a clothing item is a fair price.  Consistent with the other survey
> findings, the results showed that respondents felt very capable of
> determining whether a price is fair, with 74% rating their ability to judge a
> fair price between 8 and 10 on a 0-10 scale.  The most common
> explanations for the expressed confidence in their ability to judge fair
> prices included (see Exhibit I): "Know value/what prices should be,"
> "Shop frequently/has experience," and "Compare prices/doing research."

Dr. Simonson also found that Stein Mart shoppers distrust terms such as "Compare At" and "Comparable Value," and regard them as not providing useful information. (SUMF ¶44.)  Specifically, one survey question asked respondents:

> Using a 0 to 10 scale, where 0 means "Do not at all agree", and 10 means "Completely agree," to what extent, if at all, do you agree that that the "Compare At" price you see on  price tags at clothing stores is "A fictitious price that has been inflated to show you that they are giving you a discount"? __

The answers indicated a high degree of agreement with this characterization, with 45.5% rating their agreement between 8 and 10 (on a 0-10 scale) and 44% rating it between 4 and 7.  ***Thus, approximately 90% of Stein Mart shoppers view terms like "Compare At" with skepticism.***

## 2.     *Compare At Prices Do Not Cause Economic Loss to Plaintiffs or other Stein Mart Customers

Stein Mart also retained an economist, Dr. William Choi, Ph.D, to analyze Plaintiffs' allegations regarding Stein Mart's pricing practices and Plaintiffs' claim of economic harm resulting from Stein Mart's use of *Compare At prices.  Dr. Choi's analysis and conclusions, detailed in his report, refute Plaintiffs' assertion that *Compare At prices caused them to lose money or property.  (SUMF ¶¶46-49.)

First, Dr. Choi notes a lack of evidence that Plaintiffs suffered any economic loss. (SUMF ¶¶47.)  Plaintiffs economically *benefitted* by willingly purchasing goods that they demanded at a price they were willing to pay.  (SUMF ¶46.)  They have presented no expert evidence to support their theory of harm, and their discovery responses do not identify any economic harm.  Specifically, Dr. Choi has not found any evidence to suggest that the actual value of the products Plaintiffs purchased was incommensurate with what they paid. (SUMF ¶¶47-48.)

Second, Dr. Choi carefully reviewed academic literature cited by Plaintiffs' FAC, and evaluated their claims in light of economic understanding about how consumers evaluate prices.  He notes that Plaintiff's FAC fails to account for the way "external

reference prices" (such as *Compare At) actually influence "internal reference prices" (consumers' personal understanding of value). Moreover, there is no evidence the use of *Compare At caused Plaintiffs to overpay for the items they purchased, that they could have or would have purchased the items elsewhere for less, or that the products were of undisclosed lower quality. (SUMF ¶48.)

Third, Dr. Choi found that restitution, under any theory espoused by Plaintiffs, is not supported and would be inconsistent with the evidence. (SUMF ¶49.) Plaintiffs received value from the products they purchased, and their requests for refunds do not account for that value. (*Id*.). Awarding refunds when they have had the use and benefit of the items they bought would provide a windfall:

> In my opinion, the complete restitution model, restitutionary disgorgement of net profit model, and false discount value model are improper in this matter, as they are not based on any loss of money actually incurred by the Plaintiffs, and fail to account for any value consumers received. Even if it was determined that the *Compare At reference pricing was false or misleading (and I have not seen evidence that is the case), class members, including the class representatives, received tangible benefits from their consumption of products purchased at Stein Mart stores. There is no allegation that the products were misrepresented or of lower quality, and it is implausible that customers did not receive any value whatsoever from the consumption of the products. Accordingly, none of these proposed restitutionary models provides a valid framework for measuring economic harm. Their use here would result in an economic windfall for class members, and would be inconsistent with my understanding of restitution. (*Id*.)

## III. LEGAL STANDARDS

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A genuine issue of material fact exists only when "a reasonable jury could return a verdict [for] the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.").

Where the nonmoving party bears the burden of proof at trial, the moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets its initial burden, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In order to succeed on their UCL, FAL, and CLRA claims, Plaintiffs must prove that: (1) Stein Mart made a false or deceptive statement[3] (2) that they actually relied on the allegedly false or deceptive statement[4] and (3) that they have suffered harm as a result of the statement.[5]

//

//

//

---

[3] *See* Cal. Bus. & Prof. Code § 17200 *et seq.*; § 17500 *et seq.*; Cal. Civ. Code § 1770(a)(13); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003).

[4] *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) ("[A] class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) ("The phrase 'as a result of' . . . means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.")

[5] *Kwikset*, 51 Cal. 4th at 322 ("[A] party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.").

## IV.   ARGUMENT

### A.   Stein Mart's *Compare At Prices Are Not Deceptive to Reasonable Consumers of the Target Audience, and Plaintiffs Have No Admissible Evidence to Satisfy Essential Elements of Their Claims

#### 1.   The Phrase "*Compare At" Is Neither Material Nor Deceptive

Plaintiffs bear the burden to prove that the challenged advertising is false or misleading to "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." *Ebner v Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (quoting *Lavie v. Proctor & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (2003)).  The relevant population for determining the probability of deception is not the "least sophisticated consumer" nor an "unwary consumer," but rather, "[t]he law focuses on a reasonable consumer *who is a member of the target population*." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009)) (emphasis added).

Here, the relevant, target population is Stein Mart shoppers.  Dr. Simonson's survey evidence demonstrates that Stein Mart shoppers are not influenced or deceived by the term "*Compare At," and do not attach importance to it.  His survey demonstrated that *Compare At makes no quantifiable difference to purchase decisions. His data concerning customer knowledge and behavior explain why.  Stein Mart customers have their own internal reference prices, based on their own comparative shopping experiences.  They understand the value of what they are getting without reliance on external reference prices, and make purchase decisions based on a host of factors such as whether they like an item's look and quality, or need the item, and whether they like the actual price they will pay.  Far from relying on *Compare At, Stein Mart shoppers distrust such external references prices and do not regard them as providing useful information.

Dr. Simonson's survey evidence reinforces the testimony of Stein Mart's vice

president of advertising, Glori Katz. Different retailers appeal to different demographics.  Stein Mart's customers are mature, experienced shoppers, who make decisions based on a wide variety of factors, and make their own judgments about the value of Stein Mart's offerings.

In sharp contrast to Stein Mart's direct evidence about how its customers perceive *Compare At, Plaintiffs have come forward with nothing.  Plaintiffs rely on their own say-so as to what "reasonable consumers" of the target audience believe. Plaintiffs' failure to come forward with competent evidence about how the target audience interprets *Compare At is fatal to their claim.     See Rahman v. Mott's LLP, No. 13-cv-3482, 2014 WL 5282106, at *9-10 (N.D. Cal. Oct. 15, 2014) (granting summary judgment in favor of defendant on UCL and FAL claims despite expert testimony in support of plaintiff's arguments, because plaintiff failed "to raise a triable issue of fact as to whether a reasonable consumer would be misled by [the challenged statement]"); see also Jacobo v. Ross Stores, Inc., No. CV-15-04701-MWF-AGR, 2017 WL 3382053, at 3-5 (C.D. Cal. Aug. 2, 2017) ("Plaintiffs here have explicitly disclaimed any knowledge (beyond sheer speculation) of how other class members are likely to interpret the label.  Nor is the phrase 'Compare At' obviously false or misleading on its face.…") (internal citation omitted).

On this evidence, no reasonable jury could return a verdict for Plaintiffs. Summary Judgment is proper.

**2.      The "*Compare At" Prices on Plaintiffs' Purchases Were Not False, and Plaintiffs Have No Evidence To the Contrary**

Plaintiffs bear the burden to prove that Stein Mart's *Compare At prices are false. California and federal courts have repeatedly rejected plaintiffs' attempts to salvage deficient claims under the FAL, CLRA and UCL by contending that defendants have insufficient substantiation for their advertisements.  See, e.g.,   Aloudi v. Intramedic Research Grp., LLC, No. 16-15876, 2017 WL 6397259, at *1 (9th Cir. Dec. 15, 2017)  ("[P]rivate litigants may not sue advertisers claiming that advertising

representations lack substantiation."); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Prosecuting authorities, but not private plaintiffs, have the administrative power to request advertisers to substantiate advertising claims"); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) ("[I]t is readily apparent that *King Bio*'s holding is firmly established law in California.").

Stein Mart's Buyers, however, have explained that Stein Mart's *Compare At prices are real prices, charged by other national retailers. Indeed, it has been two years since Stein Mart filed evidence showing that Sperling's Ava pants are sold by other retailers under the "Up! Pants" brand name for substantially more than Stein Mart's "*Compare At" price, and that numerous retailers sell Yellow Box shoes for Stein Mart's "*Compare At" price. In her new declaration, Michelle Berrigan-Dreicer has addressed the *Compare At prices for other merchandise allegedly purchased by Plaintiffs. For example, she attests that the Kenneth Cole suit and Alan Flusser shirt allegedly purchased by Schuh are sold at MSRP by other major national retailers such as Men's Wearhouse and Belk.

It is, moreover, important to note that Stein Mart's Buyers are experts in the market for the goods they sell. They devote substantial effort to monitoring competitive prices, including which competitors charge the MSRP. When they attest to the validity of these *Compare At prices, they bring years of market knowledge as to how other companies price their goods. They also explain why they are right to rely on their suppliers to furnish MSRPs that actually appear in the market. Their suppliers also know what their customers charge because they print their price tags.

Plaintiffs have not come forward with any contrary evidence. In discovery, they have presented no evidence that Stein Mart's *Compare At prices are fictitious. They also have not presented evidence that other retailers offered the products they

purchased, or any other products, for less than Stein Mart's *Compare At prices.[6] Plaintiffs survived the pleading stage by alleging that Stein Mart's private label items cannot have valid *Compare At prices because they are exclusive to Stein Mart.  But Stein Mart has debunked this assertion – the same suppliers who furnish these items for sale under Stein Mart brands like Peck & Peck and Alan Flusser make the same or virtually identical items for other retailers.  Plaintiffs thus cannot prove the most basic fact essential to their claim.

## B.     Plaintiffs' CLRA Claims Fail Because a *Compare At Price Is Not a "Price Reduction"

Plaintiffs' CLRA Count alleges that Stein Mart has violated the CLRA because its *Compare At prices constitute "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  FAC ¶ 243 (citing Civ. Code § 1770(13)).  This claim lacks merit.  *Compare At prices do not convey that Stein Mart has offered a "price reduction."  Indeed, there is no evidence that Stein Mart has ever presented *Compare At prices as former prices charged by Stein Mart.

"Unlike the UCL, whose definition of prohibited conduct is open-ended and leaves it to the courts to decide the scope of the prohibition, the CLRA takes exactly the opposite approach.  It sets forth a laundry list of [25] specific activities deemed to be 'unlawful.'"  William L. Stern, Bus. & Prof. Code § 17200 Practice (The Rutter Group 2015) § 10:8.  A plaintiff cannot state a CLRA claim unless she alleges that the defendant performed one of those specific prohibited activities.  *See, e.g., Pollard v. Ericsson, Inc.*, 125 Cal. App. 4th 214, 221 (2004) (affirming dismissal of CLRA claim for allegedly deceptive rebate practices where allegations did not fit within the specific prohibition of § 1770(a)(17), which addresses rebates).

"Price reductions" within the meaning of the CLRA apply only to reference

---

[6] In her case against DSW, Plaintiff attempted to allege that shoes sold at DSW were sold by other retailers for less than DSW's "Compare At" price.  Plaintiff's allegations were facially insufficient.  *Sperling v. DSW*, 699 F. App'x 654.

Case No. 5:15-cv-01411-AB-KK

1  prices purporting to be "the prices Defendant previously charged for the same goods."

2  *Jacobo*, 2016 WL 3483206, at *4 (C.D. Cal., June 17, 2016).  Stein Mart, however,

3  makes absolutely clear to customers that *Compare At does not refer to a former price

4  charged by Stein Mart—the price tags preface the offering price with the words "Our

5  Price," creating a clear contrast with "*Compare At."

6  The legislative history for § 1770(a)(13) further contradicts Plaintiff's purported

7  interpretation of "price reduction."  The Senate Judiciary Committee has explained that

8  this section "applies to spurious 'fire' and 'liquidation' sales as well as to fictitious

9  price cuts, i.e. 'Prices are slashed due to impending bankruptcy.'" James A. Hayes,

10  Chairman Assembly Judiciary Committee, Report Relative to Assembly Bill No. 292,

11  1970 Assembly Journal 8464, 8466; *see also Wang v. Massey Chevrolet*, 97 Cal. App.

12  4th 856, 869 (Cal. Ct. App. 2002) (car dealership tricked plaintiff into signing lease

13  with greater stated price by convincing plaintiff that lease was same as regular

14  discounted sale).[7]

15  **C.**　**Plaintiffs' "Unlawfulness" Claim Fails Because Stein Mart Has Not**

16  　　**Broken the Law**

17  Plaintiffs may purport to assert a claim for "unlawfulness" under the UCL, based

18  on Stein Mart's alleged violation of the CLRA, the FAL, and the Federal Trade

19  Commission Act ("FTCA"), 15 U.S.C. §45(a)(1) and §52(a).  They also cite the FTC

20  Pricing Guides.  (FAC ¶ 203.)  A plaintiff's "unlawfulness" claim "stands and falls with

21  the viability of Plaintiff's other claims," *See Mehta v. Wells Fargo Bank, N.A.*, 737 F.

22

---

23  　　[7] Had the legislature wished to target the use of reference pricing, as opposed to

24  former pricing, it could have done so explicitly, as have other states.  *See, e.g.*, D.C.
Code § 28–3904(j) (prohibiting false or misleading representations of fact "concerning

25  the reasons for, existence of, or amounts of price reductions, ***or the price in***

26  ***comparison to price of competitors*** or one's own price at a past or future time.")
(emphasis added); K.S.A. 50-626(b)(7) (same); Md. Code Ann. Com. Law § 13-301

27  (same); NYC Admin. Code § 20-701(a)(6)(same); 9 AAC 05.020 and 05.030

28  (separately addressing "price reductions from former price" and "price comparisons").

Supp. 2d 1185, 1206 (S.D. Cal. 2010).  Here, Plaintiffs' other claims lack merit, and so does this one.

 Plaintiffs' CLRA and FAL claims fail, as set forth above, because *Compare At prices are not deceptive, or even material, to members of the target audience.  They also are not false, and Stein Mart does not suggest that they reflect price reductions.

To the extent that Plaintiffs try to rely on alleged violations of the FTCA, the Court has already rejected this effort:  "As this Court previously explained, … plaintiffs 'cannot use California law'—*i.e.*, the UCL—to 'engineer' a private right of action under the FTCA.  "It is unclear to the Court why Plaintiff's Third Amended Complaint continues to include this inappropriate basis for her UCL claim."  (Dkt. 41, at 12 fn. 4; *see also* Dkt. No. 35 at 19.)  It is well settled that there is no private right of action for violation of the FTCA,[8] and plaintiffs may not "use California law to engineer" a purported claim under the UCL, FAL or CLRA.  *O'Donnell v. Bank of Am, Natl. Assn.,* 504 Fed. Appx. 566, 568 (9th Cir. 2013); *see also Sperling v. DSW Inc.,* 2016 WL 354319, at *2 n.3 (C.D. Cal. Jan. 28, 2016),  *aff'd sub nom.*  699 F. App'x 654 (9th Cir. 2017); *Jacobo*, 2016 WL 3483206, at *5 (C.D. Cal. June 17, 2016);  *Curten v. Recontrust Co.*, No. CV 12-9565-JFW, 2013 WL 12081084, *2 (C.D. Cal., Jan. 23, 2013); *Nelson v. Am. Home Mortg. Servicing, Inc.,* No. CV 10-4562 GAF, 2010 WL 3034233, *2 (C.D. Cal. Jul. 29,2010).

The FTC's Pricing Guides cannot support an "unlawfulness" claim because these

---

[8] *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) ("private litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by s 5(a)(1). The Act rests initial remedial power solely in the Federal Trade Commission.") (citing *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973)); *see also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 27:119 (4th ed. 2017) ("While it has often been argued that a private right to sue for a violation of the FTC Act's prohibitions should be implied, the courts have consistently held that there is no such private right to sue. That is, only the FTC, as a federal agency, has the power to issue cease and desist orders, obtain civil penalties, or file suit for violation of the FTC Act.")).

1   Guides are not the law. *See Mehta*, 737 F. Supp. 2d at 1206 (To state a UCL

2   "unlawful" prong claim, Plaintiffs must allege some violation of "*law*.") (emphasis

3   added). Instead, the Guides are exactly they are called: "guides." *See* 16 C.F.R. § 1.5

4   ("*administrative **interpretations** of laws* administered by the Commission for the

5   ***guidance*** of the public in conducting its affairs in conformity with legal requirements.")

6   (emphases added); 29 Fed. Reg. 178 (1964) (Pricing Guides are not "fixed rules of

7   'do's and 'don'ts' or detailed statements of the Commission's enforcement policies");

8   *Ash Grove Cement Co. v. FTC,* 577 F.2d 1368, 1374 (9th Cir. 1978) ("industry

9   guide[s]" are "not binding on any party"); *State v. Amoco Oil Co.,* 97 Wis.2d 226, 242

10  (1980) ("unlike substantive rules, [the FTC Guides] do not have the force and effect of

11  law; the Guides are not the equivalent of the statute".); *F.T.C. v. Garvey*, 383 F.3d 891,

12  903 (9th Cir. 2004) ("The FTC acknowledges that the Guides lack the force of law

13  . . .".) As such, FTC Guides "cannot be 'borrowed' under the UCL" and used as a

14  predicate for the unlawful prong. *See Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167,

15  2009 WL 4842801, at p. *5, fn.1 (S.D.Cal. Dec. 14, 2009), *vacated on other grounds*

16  466 F. App'x 613 (9th Cir. 2012) (rejecting plaintiffs' attempt to "base their 'unlawful'

17  UCL claim on an alleged violation of the [FTC's] Guide Concerning Use of the Word

18  'Free' and Similar Representations".)

19          Finally, even if Plaintiffs could plead some regulatory or legal violation, their

20  claims would still fail. Not every alleged regulatory violation, *ipso facto*, serves as the

21  basis for a claim under California's consumer protection laws. *Perez v. Nidek Co.*, 711

22  F.3d 1109, 1119-20 (9th Cir. 2013) (rejecting "the proposition that any violation of the

23  FDCA will support a state-law claim") (internal quotations and citations omitted); *Pratt*

24  *v. Whole Foods Market California, Inc.*, No. 12-cv-05652 EJD, 2014 WL 1324288, at

25  *8 (N.D. Cal. Mar. 31, 2014) ("Plaintiff cannot circumvent the reliance requirement by

26  simply pointing to a regulation or code provision that was violated by the alleged label

27  misrepresentation, summarily claiming that the product is illegal to sell and therefore

28  negating the need to plead reliance."); *Ebner v. Fresh, Inc.*, 838 F.3d at 967-968

-19-

1    (holding alleged violations of California's Sherman Act and Fair Packaging and
2    Labeling Act did not support a claim that packaging was deceptive, because reasonable
3    consumers for high-end lip balm product would understand that some portion of the
4    product in the tube could not be used); *Pratt v. Whole Foods Mkt. Cal., Inc.*, No. 12-cv-
5    05652 EJD, 2014 WL 1324288, at *8 (N.D. Cal. Mar. 31, 2014) ("[U]nder the
6    'unlawful' prong of the UCL, a plaintiff must plead reliance when claims are premised
7    on allegedly deceptive advertising.")   Plaintiffs have no evidence here to prove
8    deception and loss, so their "unlawfulness" claim fails as a matter of law.

9    ### D.   Plaintiffs' Claims for Restitution Fail Because They Have Not Lost
10   ### Money

11       Plaintiffs' claims fail in their entirety for another fundamental reason:  Plaintiffs
12   have sustained no compensable harm.  Plaintiffs have not asserted a claim for damages.
13   Claims under the UCL and FAL do not permit claims for damages, and although
14   Plaintiffs also pled a claim under the CLRA, they did not send a requisite CLRA notice
15   letter, and neither their CLRA count nor prayer for relief makes any mention of
16   damages.[9]  Instead, their answers to interrogatories claim that they are entitled to
17   restitution in the form of a full refund, "false discount value (expectation of a
18   discount)", or "disgorgement of profits (restitutionary disgorgement)."  (SUMF ¶6.)
19   Plaintiffs have no entitlement to restitution.  Neither the law nor the facts support this
20   claim.

21       Restitution, as the California Supreme Court has time and again held, only
22   permits a court to *restore* money to plaintiffs that the defendant obtained from them by
23   unlawful means.  *See, e.g., Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th
24   1134, 1149 (2003) ("The remedy sought by plaintiff in this case is not restitutionary
25   because plaintiff does not have an ownership interest in the money it seeks to recover
26   from defendants. … Any award that plaintiff would recover from defendants would not

27
28       [9] The CLRA count seeks nothing more than injunctive relief.  *See* FAC ¶ 245.

1  be restitutionary as it would not replace any money or property that defendants took

2  directly from plaintiff."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 320, 207 P.3d 20, 35

3  (2009). Here, Plaintiffs cannot show (1) that Stein Mart improperly obtained money

4  that (2) previously belonged to them.

5      It is a bedrock tenet of California restitution law that any measure of restitution

6  must account for the value of what the Plaintiff received. Where a plaintiff has

7  received value for her payment, she may only recover restitution if she can establish

8  that her payment exceeded the value of the item she received in return. *In re Tobacco*

9  *Cases II* ("*Tobacco II*"), 240 Cal. App. 4th 779, 802 (2015). In *Tobacco II*, plaintiffs

10  sought refunds of their entire purchase for the defendants' products based simply on

11  their assertion that if they had known the information defendants purportedly

12  misrepresented, they would not have purchased the products. The Court of Appeal

13  found that requiring the defendant to refund the entire purchase price where consumers

14  received some benefit from the product would constitute "non-restitutionary

15  disgorgement," which the California Supreme Court and the Court of Appeal have both

16  held is not available under the UCL or FAL. *Id.* at 801 (citing *Cortez v. Purolator Air*

17  *Filtration Prods. Co.*, 23 Cal. 4th 163, 168-172 (2000); *Madrid v. Perot Systems Corp.*,

18  130 Cal. App. 4th 440, 460 (2005); *see Feitelberg v. Credit Suisse First Boston, LLC*,

19  134 Cal. App. 4th 997 (2005)).

20      *Tobacco II* makes clear that price/value differential "sets forth the proper

21  measure of restitution" in circumstances where plaintiffs have obtained value from the

22  item they bought. 240 Cal. App. 4th at 794 (citing *In re Vioxx Class Cases*, 180 Cal.

23  App. 4th 116, 131 (2009)). Thus, absent a "showing of loss" to the plaintiff, courts lack

24  discretion to award restitution. *Id.* at 801-02 ("[o]bviously, restitution without proof of

25  any loss to any plaintiff cannot be characterized as restitutionary.").

26      Here, Plaintiffs' three purported measures of restitution do not pass muster.

27  Plaintiffs cannot obtain a full refund, because they clearly received value from the

28  merchandise they purchased. They have worn the clothes, appreciated their style and,

Case No. 5:15-cv-01411-AB-KK

for the most part, do not even claim that the clothes are not worth what they paid. A full refund would yield an inequitable windfall.

Nor does the difference between the *Compare At price and Stein Mart's price qualify as a measure of restitution—Plaintiffs never paid the *Compare At price, so, not having parted with that money, it cannot be "restored" to them under the guise of restitution.

As for disgorgement of profits, or "price premium," Plaintiffs have come forward with nothing to show that the clothes they bought had a market value incommensurate with what they paid. Much less have they come forward with competent expert testimony to attach a dollar sum to a price differential. Market price differentials are not a matter of lay knowledge. Plaintiffs themselves are not qualified to offer opinions on the market value of their own purchases, much less the rest of Stein Mart's inventory. Plaintiffs cannot get to a jury on this issue. *Morales v. Kraft Foods Grp., Inc.,* No. LACV14-04387-JAK-PJW, 2017 WL 2598556, at *26 (C.D. Cal. June 9, 2017) (granting summary judgment as to the issue of restitution because "the evidence provided by Plaintiffs about their potential willingness to pay a premium due to the use of the 'natural cheese' label is insufficient to establish a basis for calculating restitution"); *see also Caldera v. J.M. Smucker Co*., No. CV 12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (class certification denied where Plaintiffs failed to come forward with evidence, expert or otherwise, to prove a class wide measure of damage.); *Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *10-13 (N.D. Cal. May 11, 2017) (granting motion for summary judgment as to restitution where plaintiffs' proposed models of monetary relief "fail[] to account for that benefit, and [are], therefore, impermissible under California law."); *Jacobo v. Ross Stores, Inc*., CV-15-04701, 2017 WL 3382053 (C.D. Cal. Aug. 2, 2017) (summary judgment granted where plaintiffs failed to present evidence that products were not worth what defendant claimed).

### E.   **Plaintiffs Cannot Obtain Injunctive Relief**

Plaintiffs' FAC requests that the Court issue injunctive relief, but there is no basis to do so here.  Dr. Simonson's survey proves that Stein Mart's *Compare At prices do not mislead customers and are not material to their purchase decisions.  Dr. Choi's analysis demonstrates that *Compare At prices have not caused any economic harm.  *Compare At prices do not violate Civ. Code §1770(a)(13).  Thus, there is nothing to enjoin.[10]  The UCL and CLRA themselves state that injunctive relief is only available where the defendant "has engaged, or proposes to engage in unfair competition." Cal. Bus. & Prof. Code § 17203; *see also* Cal. Civ. Code §1780(a)(2) (injunctive relief only available to "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770.").

Moreover, as Plaintiffs are not at risk of being injured in the future, they lack statutory and constitutional standing to seek injunctive relief.  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 803 (2015) ("We cannot say the court exceeded the bounds of reason by not enjoining a practice it did not find deceptive."); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (for a plaintiff to have Article III standing to seek injunctive relief, "the threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient.").

### F.   **Schuh's Deemed Admissions Require Entry of Summary Judgment**

Jerred Schuh has failed to respond to Stein Mart's requests for admission (and other written discovery).  Pursuant to Fed. R. Civ. P. 36(a)(3), he has admitted that he

---

[10] Special caution is also warranted because Plaintiffs' claims implicate First Amendment rights.  Truthful, non-deceptive price information is speech protected under the Constitution. *See Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144, 1150-1152 (2017); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 761 (1976); *Italian Colors Rest. v. Becerra*, No. 15-15873, 2018 WL 266332, at *9 (9th Cir. Jan. 3, 2018) ("We fail to see how a law that keeps truthful price information from customers increases the accuracy of information in the marketplace.")

1  has not incurred actual damage, that he did not rely on the phrase "*Compare At", that

2  he read Stein Mart's "Fair Pricing Policy" before making his purchases, and that he has

3  no reliable means to calculate restitution.  These admissions are fatal to all of his

4  claims, and provide an independent basis for the entry of summary judgment. *See*

5  *Ocasio v. Las Vegas Metro. Police Dep't*, 10 F. App'x 471, 472 (9th Cir. 2001)

6  (holding that plaintiff's failure to respond to requests for admissions necessitated that

7  the matters be deemed admitted, and, in the absence of any disputed issues of material

8  fact, summary judgment was properly granted) (citing *O'Campo v. Hardisty*, 262 F.2d

9  621, 623-24 (9th Cir.1958)); *Wohl v. Cty. of Los Angeles*, 225 F. App'x 676, 677 (9th

10  Cir. 2007) (same); *GTE Directories Corp. v. McCartney*, 11 F. App'x 735, 737 (9th Cir.

11  2001) (trial court could grant summary judgment based on deemed admissions, even

12  though agent submitted admissible evidence contradicting the deemed admissions).

13  **V.     CONCLUSION**

14       This case commenced in July, 2015.  Two and a half years later, Plaintiffs have

15  no evidence that Stein Mart's *Compare At pricing is deceptive to members of the

16  target audience, or that it has harmed anyone.  Stein Mart respectfully requests that the

17  Court grant judgment in its favor, and against Plaintiffs.

18

19  DATED:  January 8, 2018

20

21                                    STEPTOE & JOHNSON LLP

22

23

24                            By:        /s/ Anthony J. Anscombe

25                                    STEPHANIE A. SHERIDAN
                                      ANTHONY J. ANSCOMBE
26                                    MEEGAN B. BROOKS
                                      Attorneys for Defendant
27                                    STEIN MART, INC.

28