STEPTOE & JOHNSON LLP
STEPHANIE A. SHERIDAN, State Bar No. 135910
ssheridan@steptoe.com
ANTHONY J. ANSCOMBE, State Bar No. 135883
aanscombe@steptoe.com
MEEGAN B. BROOKS, State Bar No. 298570
mbrooks@steptoe.com
Steuart Tower, 1 Market St #1800
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6678

Attorneys for Defendant
STEIN MART, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARILYN SPERLING and JERRED SCHUH, an individual; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEIN MART, INC.,<br><br>Defendant. | Case No. 5:15-cv-01411-AB-KK<br><br>**DEFENDANT STEIN MART, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Filed concurrently with Defendant's Notice of Motion and Motion for Summary Judgment, or, in the Alternative, and supporting documents]<br><br>Judge: Hon. André Birotte, Jr.<br>Date: Friday, February 16, 2018<br>Time: 10:00 a.m.<br>Courtroom: 7B – First Street |

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56-1, and Section 7(c)(i) of this Court's Standing Orders, Defendant Stein Mart, Inc. ("Stein Mart") submits the following Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Its Motion for Summary Judgment, or, in the Alternative, Summary Adjudication:

## UNCONTROVERTED FACTS

I. **Factual Background**

    A. **Stein Mart and Its Customers**

| UNCONTROVERTED FACT | EVIDENCE |
| --- | --- |
| 1. Stein Mart is a retailer of high quality fashion and household products, offered at everyday low prices. Stein Mart strives to set its initial prices at levels that will give its customers an incentive to shop at Stein Mart every day. | Declaration of Glori Katz ("Katz Decl.") (Dkt. # 101-2), ¶3; *See also* Declaration of Anthony J. Anscombe, Esq. ("Anscombe Decl."), (Dkt. #101-7) at ¶4, Ex. C, pp. 50:7-9, 109:20. |
| 2. Stein Mart accomplishes this by staffing its stores leanly, as well as by locating in less expensive retail centers, and passes savings on to customers in the form of everyday low prices. | Katz Decl. (Dkt. # 101-2), ¶3. |
| 3. Most clothing retailers have their own distinctive target demographic and customer base. | Katz Decl. (Dkt. #101-2), ¶4. |

| | |
|---|---|
| 4. Stein Mart customers are predominantly female, with an average of over 50, are comparatively affluent, with an average family income of approximately $75,000.00. | Katz Decl. (Dkt. #101-2), ¶4; *See also* Anscombe Decl. (Dkt. #101-7), ¶4, Ex. C, p. 98:19-99:24; *See also* Declaration/Report of Itamar Simonson ("Simonson Decl."), (Dkt. #101-8), ¶24. |
| 5. Stein Mart customers tend to be experienced, fashion conscious shoppers. They are knowledgeable about brands, and about the prices charged by other retailers. While they appreciate value, they are not preoccupied with finding the lowest price possible. | Katz Decl. (Dkt. #101-2), ¶5; *See also* Anscombe Decl. (Dkt. #101-7), ¶4, pp. 64:15-22, 65:7-11, 100:14-23; 109:8-9, 110:6-11; *See also* Simonson Decl. (Dkt. #101-8), ¶14.C, 65.C. |
| 6. Under its everyday low pricing strategy, Stein Mart sell the same or similar merchandise as sold at department stores, boutiques, specialty stores and other full-price retailers, at lower prices than those of full-price retailers. | Anscombe Decl. (Dkt. #101-7), ¶4, Ex. C, pp. 108:18-109:12; Ex. ¶5, Ex. D, pp. 115:24-116:17. |

| | |
|---|---|
| 7. In addition to its "every-day low prices", Stein Mart does periodically offer additional promotional pricing discounts. Sometimes, an additional dollar amount or percentage is taken off of the "every-day low price" for a short time (*e.g.*, Labor Day weekend). Moreover, as merchandise ages, it may be permanently marked down. | Katz Decl. (Dkt. #101-2), ¶8; *See also* Anscombe Decl. (Dkt. #101-7), 4, Ex. C, pp. 78:19-22, 80:8-17, 117:20-118:6, 123:1-4. |
| 8. Stein Mart's Buyers manage product selection, inventory and pricing. | Declaration of Michelle Berrigan-Dreicer ("Berrigan-Dreicer Decl.") (Dkt. #101-3), ¶6; *See also* Anscombe Decl. (Dkt. #101-7), ¶ 5, Ex. D, p. 12:13-18. |

**B.** <u>**Stein Mart Pricing**</u>

| | |
|---|---|
| 9. The retail industry is cyclical and seasonal. Buyers make purchasing decisions many months before the inventory hits the retail floor. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶6. |
| 10. Stein Mart sets financial goals for different product lines, and buyers set the goods' every day prices at levels designed to meet those goals. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶7. |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | 11. Stein Mart's *Compare At prices are based on the MSRPs provided by their suppliers. The suppliers provide MSRPs for what they expect those other retailers to charge. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶¶8-9; *See also* Declaration of Paula Adams ("Adams Decl.) (Dkt. #101-4), ¶5, Ex. A; *See also* Anscombe Decl. (Dkt. #101-7, ¶5, Ex. D, pp. 13:17-14:25. |
| 6<br>7<br>8<br>9<br>10<br>11 | 12. Stein Mart receives MSRPs from its suppliers, who will often provide the names of other retailers that charge those MSRPs. | Anscombe Decl. (Dkt. #101-7), ¶5, Ex. D, pp. 20:21-24, 36:18-19, 52:23-53:1, 53:3-5; *See also* Adams Decl. (Dkt. #101-4), ¶¶5-6.; *See also* Anscombe Decl. (Dkt. #101-7), ¶12, Ex. H, Response to Interrogatory No. 3. |
| 12<br>13<br>14<br>15<br>16 | 13. These suppliers are knowledgeable about the market for their own goods, and have visibility to what their customers will charge because they often print their price tags. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶9. |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 14. Stein Mart's buyers do not rely exclusively on suppliers for information about competitive conditions. Buyers and their teams of assistant buyers also routinely monitor market conditions. Through "comparison shopping" (also known as "competitive shopping," "competitor shopping," or "comp shopping"), they continually monitor the prices charged by their competitors. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶10; *See also* Adams Decl. (Dkt. #101-4), ¶6; *See also* Anscombe Decl. (Dkt. #101-7), ¶5, Ex. D, pp. 35:23, 36:17, 107:18-110:8. |

### C. Stein Mart's "*Compare At" Prices

| | |
|---|---|
| 15. Stein Mart's tags follow several formats, depending on their size, but contain a *Compare At price, an Our Price, and an information about Stein Mart's Fair Pricing Policy. | Anscombe Decl. (Dkt. #101-7), ¶4, Ex. C, pp. 46:13-14. |
| 16. The asterisk that appears in front of "Compare At" directs customers to Stein Mart's fair pricing policy, which it posts at every cash register and online. | Anscombe Decl. (Dkt. #101-7), ¶4, Ex. C, pp. 46:13-14; 32:1-10, 36:12-14, 37:9-12, 39:3-14, 42:5-16, 45:16-46:12, 48:22-24, 56:17-20; 81:12-82:1, 116:3-9; *See also* Fourth Amended Complaint ("FAC") (Dkt. #87), ¶¶52-56. |
| 17. Stein Mart's Fair Pricing Policy reads as follows:<br><br>We strive to offer our customers true everyday value. Our "Compare at" price is based on input from our suppliers. We believe that it represents the original price of the same item or a comparable item at department stores, specialty stores or other full-price stores. Our "Compare at" price may not be the starting price posted by all full-price stores, and some stores may offer substantial discounts off the suggested retail price. | FAC (Dkt. #87), ¶54. |

| | |
|---|---|
| 18. Throughout the Class Period, Stein Mart has posted its Fair Pricing Policy at every cash register at every retail location. It has also published the Fair Pricing Policy on its website throughout the Class Period. | Katz. Decl. (Dkt. #101-2), ¶9. |
| 19. Through comparative shopping, Stein Mart's buyers confirm that the MSRPs provided by its vendors reflect actual prices sold at the types of stores noted in the fair pricing policy. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶10; *See also* Adams Decl. (Dkt. #101-4), ¶_6; *See also* Anscombe Decl. (Dkt. #101-7), ¶5, Ex. D, pp. 35:23, 36:7-17, 66:18-67:6, 107:18-110:8, 121:16-18. |
| 20. Vendors that make Stein Mart's private label goods frequently sell the same or virtually the same goods to other vendors' to sell under their own respective private labels. | Declaration of Sam Zucker ("Zucker Decl.") (Dkt. #101-5), ¶¶3-7; *See also* Anscombe Dec. (Dkt. #101-7), ¶4, Ex. C, pp 93:25-94:14; , and ¶5, Ex. D, pp. 29:16-20, 71:20-22; 110:15-115:19. |
| 21. Stein Mart defines "similar" products as those that are the same in quality, design, look and feel, but which might have some modest cosmetic differences. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶12; *See also* Anscombe Dec. (Dkt. #101-7), ¶5, Ex. D. 110:15-115:19 |

### D. (1) **Plaintiffs and Their Purchases – Marilyn Sperling**

| | |
|---|---|
| 22. Plaintiff Marilyn Sperling is an avid shopper, who makes between 225 and 350 credit card purchases per year at a wide assortment of retailers (*e.g.*, Talbots, Nordstrom, Banana Republic), big box stores (*e.g.*, Target, Wal-Mart), and other retail locations. | Anscombe Decl., (Dkt. #101-7), ¶13, Ex. I (Filed Under Seal). |
| 23. In addition to her credit card purchases, Ms. Sperling makes additional retailer purchases in cash, which she has testified is her preferred method of payment for retail purchases. | Anscombe Decl. (Dkt. #101-7), ¶2, Ex. A, p. 36:7. |
| 24. Ms. Sperling purchased the Peck & Peck Ava pant at issue in this case from Stein Mart, in part, because they "looked nice". Ms. Sperling has testified that she has used the pants, that they were worth what she paid for them, and that she could have bought the same pants from Stein Mart regardless of the presence of the "*Compare At" price. | Anscombe Decl. (Dkt. #101-7), ¶2, Ex. A, pp. 60:2, 63:6, 124:24-126:3. |
| 25. Ms. Sperling can assess the value of retail merchandise without the presence of a "*Compare At" price. | Anscombe Decl. (Dkt. #100-7), ¶2, Ex. A, pp. 113:16-19, 56:1-4. |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | 26. The Ava pant sold by Stein Mart under the Peck &Peck label is also sold by other retailers under those retailers' own private labels. The pants sold by those other retailers are identical in every substantive way, manufactured on the same machines by the same vendor, using the same fabric and stitching quality. | Zucker Decl. (Dkt. #101-5), ¶¶3-7; *See also* Adams Decl. (Dkt. #101-4), ¶6. |
| 10<br>11<br>12<br>13<br>14<br>15 | 27. These other retailers sell the pant under their own private labels for between $115 and $138 – more than double Stein Mart's "*Compare At" price, and approximately 150% greater than what Ms. Sperling actually paid. | Adams Decl. (Dkt. #101-4), ¶6; *See also* Zucker Decl. (ECF #101-5), ¶¶3-7. |
| 16<br>17<br>18<br>19<br>20<br>21 | 28. Ms. Sperling has not produced evidence sufficient to permit Stein Mart to identify the SKUs associated with the Revelation bag or Yellow Box sandals that Ms. Sperling also alleges that she purchased from Stein Mart. | Anscombe Decl. (ECF #101-7), ¶6, Ex. E, *passim*; *See also* Pierce Decl. (Dkt. #101-6), ¶3. |
| 22<br>23<br>24<br>25<br>26<br>27 | 29. The "*Compare At" prices that Stein Mart uses for the Revelation brand luggage line and the Yellow Box shoe line are based on MSRP prices provided to Stein Mart buyers by the vendors of those goods. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶¶8, 17, 19; *See also* Declaration of Gary Pierce ("Pierce Decl."); (Dkt. #101-6); ¶4, and Exhibit A thereto. |

| | |
|---|---|
| 30. Ms. Sperling has not provided or identified any evidence to support her claim that the "*Compare At" provided by Stein Mart for her purchases, or any other Stein Mart purchases, are false. | Anscombe Decl. (Dkt. #101-7), ¶6, Ex. E, *passim*; *See also* Pierce Decl. (Dkt. #101-6), ¶3. |
| 31. Ms. Sperling filed a similar claim against DSW involving its reference pricing. This action was dismissed, in part because Ms. Sperling did not plead facts sufficient to show that DSW's reference prices were false. The U.S. Court of Appeals for the 9th Circuit affirmed this dismissal. | *Sperling v. DSW, Inc., et al.*, Case No. 5:15-cv-01366-JGB-SP (C.D. Cal.), (Dkt. # 1, 38, 46-47, 50-51). |

### D. (2) Plaintiffs and Their Purchases – Jarred Schuh

| | |
|---|---|
| 32. On or about October 26, 2017, Stein Mart served Mr. Schuh with its Requests for Admission (Set One). | Anscombe Decl. (Dkt. #101-7), ¶7, Ex. F. |
| 33. Mr. Schuh failed to serve any written responses or objections to Stein Mart's Requests for Admission (Set One). | Anscombe Decl. (Dkt. #101-7), ¶8, Ex. G. |
| 34. Mr. Schuh considers himself a savvy shopper. He bases his retail shopping decisions on whether he likes an item and whether he believes it is worth the cost. | Anscombe Decl. (Dkt. #101-7), ¶3, Ex. B, pp. 71:1-25; *see also* 56:18-58:8; 69:21-24; 73:9. |

| | |
|---|---|
| 35. The "*Compare At" prices that appeared on the Kenneth Cole pants and jacket purchased by Mr. Schuh from Stein Mart were MSRP prices provided to Stein Mart by the manufacturer of those items. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶¶17. |
| 36. The Kenneth Cole pants and jacket purchased by Mr. Schuh from Stein Mart are also sold by other retailers at or above the "*Compare At" prices provided by Stein Mart. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶¶17, 19. |
| 37. Mr. Schuh likes the Kenneth Cole pants and jacket that he purchased from Stein Mart. | Anscombe Decl. (Dkt. #101-7), ¶3, Ex. B, pp. 101:16, 103:10-12, 163:19, 178:10. |
| 38. The shirt sold by Stein Mart to Mr. Schuh under the Alan Flusser label is also sold by other retailers under those retailers' own private labels. The shirts sold by those other retailers are identical in every substantive way, manufactured on the same machines by the same vendor, using the same fabric and stitching quality. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶20. |
| 39. these other retailers sell the shirt under their own private labels. | Berrigan-Dreicer Decl. (Dkt. #101-3), ¶20. |

| | |
|---|---|
| 40. Mr. Schuh does not think he paid too much for the Alan Flusser shirt. | Anscombe Decl. (Dkt. #101-7), ¶3, Ex. B, pp, 166:21, 168:10. |

## II. STEIN MART'S EXPERT EVIDENCE

### A. Stein Mart's Customers' Perceptions About "*Compare At" Prices

| | |
|---|---|
| 41. Survey evidence proves that "*Compare At" prices do not increase the likelihood that Stein Mart shoppers will make a purchase. | Declaration of Itamar Simonson ("Simonson Decl."), (Dkt. #101-8), ¶¶ 14.A, 65.A, *passim*. |
| 42. Survey evidence proves that "*Compare At" prices do not lead Stein Mart shoppers to perceive the Stein Mart's prices as lower. | Simonson Decl. (Dkt. #101-8), ¶14.B, 65.B, *passim*. |
| 43. Survey evidence proves that Stein Mart shoppers consider themselves very capable of judging whether the price of retail merchandise is fair. | Simonson Decl. (Dkt. #101-8), ¶14.C, 65.C, *passim*. |
| 44. Survey evidence proves that Stein Mart shoppers distrust terms such as "Compare At" and "Comparable Value," and regard them as not providing useful information. | Simonson Decl. (Dkt. #101-8), ¶`4.D, 65.D, *passim*. |

| | |
|---|---|
| 45. Survey evidence demonstrates that Stein Mart shoppers make purchase decisions for many different reasons, based on many different considerations. | Simonson Decl. (Dkt. #101-8), ¶36, 53, 55-56, 65. |

### B. *Compare At Prices Do Not Cause Economic Loss to Plaintiffs or other Stein Mart Customers

| | |
|---|---|
| 46. Plaintiffs economically *benefitted* by willingly purchasing goods that they demanded at a price they were willing to pay. | Declaration of William Choi ("Choi Decl."), (Dkt. #101-9), ¶¶25-58. |
| 47. There is no evidence to suggest that the actual value of the products Plaintiffs purchased was incommensurate with what they paid. | Choi Decl. (Dkt. #101-9), ¶¶55-57. |
| 48. There is no evidence the use of *Compare At caused Plaintiffs to overpay for the items they purchased, that they could have or would have purchased the items elsewhere for less, or that the products were of undisclosed lower quality. | Choi Decl. (Dkt. #101-9), ¶¶3, 25. |

| | |
|---|---|
| 49. Plaintiffs received value from the products they purchased, and their requests for refunds do not account for that value. Awarding refunds when they have had the use and benefit of the items they bought would provide a windfall. | Choi Decl. (Dkt. #101-9), ¶30, 35. |

**Plaintiffs' Expert Evidence**

| | |
|---|---|
| 50. Plaintiffs did not disclose any expert testimony in accordance with deadlines set by the operative Case Management Orders. | Anscombe Decl. (Dkt. #101-7), ¶8; *See also* Dkt #56 (creating "70-day" rule) and Dkt. #92 (extending discovery cut-off). |

## CONCLUSIONS OF LAW

1. A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). Where the nonmoving party bears the burden of proof at trial, the moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

2. Plaintiffs bear the burden to prove that the challenged advertising is false or misleading to "a significant portion of … targeted consumers, acting reasonably in the circumstances." *Ebner v Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (quoting *Lavie v. Proctor & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (2003)).

3. Survey evidence proves that Stein Mart shoppers are not misled by *Compare At prices, do not regard *Compare At prices as material, distrust terms such as "Compare At" and Plaintiffs' failure to come forward with competent evidence about how the target consumers interpret "Compare At" is fatal to their claim. *See Rahman v. Mott's LLP*, No. 13-cv-3482, 2014 WL 5282106, at *9-10 (N.D. Cal. Oct. 15, 2014) (granting summary judgment in favor of defendant on UCL and FAL claims despite expert testimony in support of plaintiff's arguments, because Plaintiff failed "to raise a triable issue of fact as to whether a reasonable consumer would be misled by [the challenged statement]").

4. Plaintiffs bear the burden to prove that Stein Mart's *Compare At prices are false. California and federal courts have repeatedly rejected plaintiffs' attempts to salvage deficient claims under the FAL, CLRA and UCL by contending that defendants have insufficient substantiation for their advertisements. *See, e.g.*, *Aloudi v. Intramedic Research Grp., LLC*, No. 16-15876, 2017 WL 6397259, at *1 (9th Cir. Dec. 15, 2017) ("[P]rivate litigants may not sue advertisers claiming that advertising representations lack substantiation."); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (same).

5. *Compare At prices do not convey that Stein Mart has offered a "price reduction" within the scope of Civ. Code §1770(13).

6. A plaintiff's "unlawfulness" claim "stands and falls with the viability of Plaintiff's other claims," *See Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1206 (S.D. Cal. 2010).

7. There is no private right of action for violation of the FTCA, *Carlson v. Coca Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973), and plaintiffs may not "use California law to engineer" a purported claim under the UCL, FAL or CLRA. *O'Donnell v. Bank of Am, Natl. Assn.*, 504 Fed. Appx. 566, 568 (9th Cir. 2013).

8. FTC Guides "cannot be 'borrowed' under the UCL" and used as a predicate for the unlawful prong. *See Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167,

2009 WL 4842801, at p. *5, fn.1 (S.D.Cal. Dec. 14, 2009), *vacated on other grounds* 466 F. App'x 613 (9th Cir. 2012) (rejecting plaintiffs attempt to "base their 'unlawful' UCL claim on an alleged violation of the [FTC's] Guide Concerning Use of the Word 'Free' and Similar Representations".)

9. Regulatory violations cannot serve as a basis for a claim under the UCL unless Plaintiff can prove deception and loss. *Perez v. Nidek Co.*, 711 F.3d 1109, 1119-20 (9th Cir. 2013); *Ebner v. Fresh, Inc.*, 838 F.3d at 967-968.

10. Restitution only permits a court to *restore* money to plaintiffs that the defendant obtained from them by unlawful means. *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *In re Tobacco II Cases*, 46 Cal. 4th 298, 320, 207 P.3d 20, 35 (2009). Where a plaintiff has received value for her payment, she may only recover restitution if she can establish that her payment exceeded the value of the item she received in return. *In re Tobacco Cases II* ("*Tobacco II*"), 240 Cal. App. 4th 779, 802 (2015). "Non-restitutionary disgorgement" is not available under the UCL or FAL. *Id.* at 801 (citing *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. 2012). *Tobacco II* makes clear that price/value differential "sets forth the proper measure of restitution" in circumstances where plaintiffs have obtained value from the item they bought. 240 Cal. App. 4th at 792, 794.

11. Plaintiffs cannot show (1) that Stein Mart improperly obtained money that (2) previously belonged to them.

12. Under the UCL and CLRA, injunctive relief is only available where the defendant "has engaged, or proposes to engage in unfair competition." Cal. Bus. & Prof. Code § 17203; *see also* California Civil Code §1780(a)(2) (injunctive relief only available to " Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770.").

13. Plaintiffs who are not at risk of being injured in the future lack statutory

and constitutional standing to seek injunctive relief. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 803, 192 Cal. Rptr. 3d 881, 902 (2015) ("We cannot say the court exceeded the bounds of reason by not enjoining a practice it did not find deceptive."); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (for a plaintiff to have Article III standing to seek injunctive relief, "the threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient.").

14. Failure to respond to a Request for Admission is treated as an admission, Pursuant to Fed. R. Civ. P. 36(a)(3), and provide an independent basis for entry of summary judgment. *See, e.g. Ocasio v. Las Vegas Metro. Police Dep't*, 10 F. App'x 471, 472 (9th Cir. 2001).

DATED: January 8, 2018              STEPTOE & JOHNSON LLP


By: _____*s/ Anthony J. Anscombe*_____
STEPHANIE A. SHERIDAN
ANTHONY J. ANSCOMBE
MEEGAN B. BROOKS
Attorneys for Defendant
STEIN MART, INC.